FRANKLIN G. ALLEN, Plaintiff-Appellee, *v.* AMBER MANOR APARTMENTS PARTNERSHIP *et al.*, Defendants-Appellants.—(HYMAN CLAPMAN *et al.*, Defendants.)

First District (2nd Division)    No. 80-1024

Opinion filed March 31, 1981.—Rehearing denied May 12, 1981.

Joel J. Sprayregen, Roger L. Price, and Randall D. Schmidt, all of Aaron, Schimberg, Hess, Rusnak, Deutsch & Gilbert, of Chicago, for appellants.

Ellis B. Rosenzweig and Morton Denlow, both of Sachnoff, Schrager, Jones, Weaver & Rubenstein, Ltd., of Chicago, for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Defendants-appellants Amber Manor Apartments Partnership, William J. Brant, Jr., L. Cosby Bernard, Jr., and Lewis J. Scheer appeal from an order of the circuit court of Cook County which granted a motion by plaintiff-appellee, Franklin G. Allen, for partial summary judgment declaring Allen a limited partner of the Amber Manor Apartments Partnership. We consider whether the trial court erred in granting Allen's motion for partial summary judgment.

The following factual allegations emerge from the pleadings, affidavits and discovery depositions. On or about November 1, 1971, defendants Sauk Properties, Inc., Hyman Clapman, Willard Gassel and Duane F. Linden entered into a limited partnership agreement for the purpose of constructing and operating a qualifying housing development under the National Housing Act. The partnership was designated the Amber Manor Apartments Partnership. On or about February 27, 1972, defendants-appellants, William J. Brant, Jr., L. Cosby Bernard, Jr., and Lewis J. Scheer, entered into an agreement which provided for the admission of Brant, Bernard and Scheer as limited partners.[1] During the period of November 1971 through December 1974, Amber Manor Apart-

---

[1] Although not crucial to the issue before us on appeal, but for the purpose of factual accuracy, the pleadings, affidavits and depositions contain a reference that due to some failure to comply with formal requisites of Indiana partnership law Brant, Bernard and Scheer became general partners.

ments Partnership acquired an interest in certain real estate in Hobart, Indiana, and obtained certain financing for the construction of an apartment complex.

In December 1974 additional financing was required to pay outstanding construction debts, to complete construction and provide working capital. During the latter part of 1974 representatives of Brant, Bernard, Scheer, Clapman, Linden and Amber Manor Apartments Partnership met with representatives of plaintiff-appellee, Franklin Allen, and other interested investors. Thereafter Allen, the other investors, Brant, Bernard, Scheer, Clapman, Cassel, Linden, Sauk Properties, Inc., and Eugene Storry executed an agreement which is the subject of this action.[2]

The agreement provides, *inter alia*: (1) that each of the new limited partners (Allen and the other investors) "agree to pay into the capital of Amber [Manor Apartments Partnership] the amount of money set opposite his name, the aggregate total of which constitutes FIVE HUNDRED THOUSAND ($500,000) DOLLARS, provided the terms and provisions of this Agreement are met, as evidenced by promissory notes"; (2) that Brant, Bernard and Scheer "shall be the sole General Partners of Amber prior to December 31, 1974, and shall continue as sole General Partners until 'completion of the Project' ";[3] (3) that "Storry shall become a General Partner of Amber * * * upon Completion of the Project"; (4) that each of the new limited partners "agree to loan to the General Partners, jointly and severally, the amount of money set opposite his name, the aggregate total of which constitutes FIFTY THOUSAND ($50,000.00) DOLLARS, which loan shall be evidenced by a Promissory Note from the General Partners to the New Limited Partners, bearing interest at 6% per annum, due and payable on or before December 31, 1975,[4] subject to acceleration upon the escrow dispursement [*sic*] pursuant to the Completion of the project, secured by an assignment of collateral reasonably acceptable to Storry, with a net fair market value of at least $50,000.00"; (5) that the "General Partners shall loan such $50,000.00 to Amber to be used for: (a) the redemption of the interest of Salk [*sic*] Properties, Inc., Talandis Construction Company, and Vytantes Talandis in the Partnership; and/or (b) the Project"; (6) that the "capital contributions from the New Limited Partners shall be due and payable within thirty days following notice

---

[2] The agreement states "THIS AGREEMENT entered into this 27th day of December, 1974 * * *." Allen alleges in his complaint that the agreement was entered into on December 27, 1974. Defendants-appellants, Amber Manor Partnership, Brant, Bernard and Scheer, in their answer to Allen's complaint admit that the agreement was executed but deny that it was executed on December 27, 1974.

[3] There is a lengthy definition of the term "Completion of the Project" contained in the agreement which need not be recited.

[4] The promissory notes provide that the loan shall become due and payable on or before January 31, 1976.

from the General Partners of the Completion of the Project; provided, however, such notice may not be given sooner than June 15, 1975 nor later than January 31, 1976"; (7) that "[i]f the completion of the Project does not occur on or before January 31, 1976, then the obligation of the New Limited Partners to: (a) make any capital contribution, or (b) pay any monies whatsoever with respect to either Amber or the Project, shall terminate."

The agreement further provides that "[t]he New Limited Partners are hereby admitted to Amber as of January 1, 1974 on the following basis:

(a) The participation in the profits and losses of Amber shall be allocated among the parties hereto in the following manner:

(i) For the calendar year 1974:

| Party | Percent of Profits and Losses |
|-------|-------------------------------|
| Old Limited Partners | 0% |
| New Limited Partners | 100% |

(ii) For: (a) calendar year 1975; and (b) calendar year 1976 and subsequent years, *if* the Completion of the Project does *not* occur:

| Party | Percent of Profits and Losses |
|-------|-------------------------------|
| Old Limited Partners | 51% |
| New Limited Partners | 49% |

(iii) For the calendar year 1976 and subsequent years, *if* the Completion of the Project occurs:

| Party | Percent of Profits and Losses |
|-------|-------------------------------|
| Old Limited Partners | 47-1/2% |
| Storry | 5% |
| New Limited Partners | 47-1/2% |

(b) The net cash flow generated from the operations of the Project shall be distributed among the parties hereto in the following manner and in accordance with the following priorities:

(i) For the calendar year 1974:

| Party | Percent of Cash Flow |
|-------|----------------------|
| New Limited Partners | 47-1/2% |
| Old Limited Partners | 52-1/2% |

(ii) For the calendar year 1975 and subsequent years, if the Completion of the Project occurs:

(a) First, an amount equal to 11% of the cash capital contribution of the New Limited Partners as of the escrow disbursement pursuant to the Completion of the Project, less any cash capital

contribution returned to the New Limited Partners prior to June 30, 1976, pursuant either to Paragraph 7 or by a return of capital from Amber, shall be distributed among the New Limited Partners on a non-cumulative basis.

(b) Second, an amount equal to the amount distributed to the New Limited Partners pursuant to Subparagraph (a) above shall be distributed among Old Limited Partners on a non-cumulative basis.

(c) Third, an amount equal to 5% of the amount distributed to the New Limited Partners and the Old Limited Partners pursuant to Subparagraph (a) and (b) above shall be distributed to Storry on a non-cumulative basis.

(d) Fourth, any amounts due to the New Limited Partners pursuant to Paragraph 7 hereof.[5]

(e) Fifth, all amounts in excess thereof shall be distributed as follows:

| | |
|---|---|
| Storry | 5% |
| Old Limited Partners | 47-1/2% |
| New Limited Partners | 47-1/2% |

(iii) For the calendar year 1975 and subsequent years, *if* the Completion of the project does *not* occur; all of the Cash Flow shall be distributed to the Old Limited Partners on a non-cumulative basis."

The agreement also provides that:

"The General Partners hereby represent to Storry and the New Limited Partners that the net tax losses of Amber to be reported for Federal Income Tax purposes for the calendar year 1974 are not less than FOUR HUNDRED SEVENTY-FIVE THOUSAND ($475,000.00) DOLLARS and that such losses have been determined in accordance with good accounting practices and will be subscribed to by the accounting firm of Altschuler, Melvoin and Glasser or any of the eight largest public accounting firms. To the extent that the net federal income tax losses of Amber for the calendar year 1974 are less than $475,000.00, the required aggregate cash capital contributions of the New Limited Partners shall be proportionately reduced by an amount equal to 50% of the amount by which such net federal income tax loss are less than $475,000.00."

On December 30, 1974, an amended certificate of limited partnership was recorded in the office of the recorder of Lake County, Indiana. The

---

[5] Paragraph 7 concerns the distribution of net proceeds in the event the Project is refinanced by increasing the amount of the loan from Bell Federal Savings and Loan.

amended certificate listed Allen and the other new limited partners and set forth the terms and provisions of the agreement. The amended certificate was signed by David Rosenthal as "Attorney-In-Fact" for Brant, Bernard and Scheer, and by Eugene Storry for Allen and the other new limited partners.

Pursuant to the agreement Brant, Bernard and Scheer executed a promissory note dated December 30, 1974, in the amount of $50,000 due and payable on or before January 31, 1976. On January 27, 1975, Alfred C. McClure, one of the attorneys for Brant, Bernard, Scheer and Amber Manor Apartments Partnership, sent a letter to Jeffery Rubenstein (an attorney for Allen and the other new limited partners). In that letter Mr. McClure requested that the "remainder of $50,000" be forwarded to him. In a letter dated March 18, 1975, Mr. McClure informed Mr. Rubenstein that the remainder of the $50,000 loan was "release[d]."[6]

Allen's complaint alleges that $450,000, "funds for [the] capital contributions," was placed in escrow. In their answer, Brant, Bernard, Scheer and Amber Manor Apartments Partnership neither admitted nor denied the allegation but demanded strict proof thereof.

On January 24, 1975, Brant filed a report of sale pursuant to section 4(G) of the Illinois Securities Act reporting the sale of limited partnership interests to Allen and the other new limited partners. The report listed each new limited partner's name, address, the extent of his interest. The date of sale listed for each of the new limited partners is either December 27, 1974, December 28, 1974, December 29, 1974, December 30, 1974, or December 31, 1974. In the report Brant noted that:

> "The limited partnership units are sold in exchange for commitments by the purchasers to make contributions to the capital of Amber Manor Associates in the following amounts if and only if certain conditions are satisfied in 1975. Each purchaser has made a loan to the general partners of Amber Manor Associates in the amount of 10% of such capital contribution."

The partnership income returns (IRS Form 1065) for the calendar years 1974, 1975, 1976, 1977 and 1978 listed, on Schedule K-1, Allen and the other new limited partners as limited partners.

On April 1, 1976, Allen filed a complaint for accounting, specific performance, injunction and declaratory judgment. Allen requested that the court declare that the agreement is valid, binding and enforceable upon all parties; that Amber Manor Apartments Partnership is a duly organized and validly existing limited partnership under the laws of the State of Indiana; and that Allen and the other persons designated in the agreement as new limited partners are, in fact, limited partners of Amber

---

[6] The letter provides no explanation of the meaning of "release[d]."

Manor Apartments Partnership. Pursuant to Allen's motion for partial summary judgment, the court found that "the Agreement dated December 27, 1974 * * * is a valid and enforceable Agreement * * * [and] that there was adequate consideration for such Agreement on the part of the 'New Limited Partners.' " The court adjudged and decreed Allen "to be and to have been a limited partner in the Amber Manor Apartments Partnership, an Indiana Limited Partnership, as of January 1, 1974 pursuant to the terms of the said Agreement dated December 27, 1974." Defendants Brant, Bernard, Scheer and Amber Manor Apartments Partnership appeal from this order. Defendants Clapman, Gassel, Linden, Sauk Properties, Inc., and Eugene Storry have not appealed.

■■ Limited partnerships were unknown at common law; they are exclusively a creature of statute. Their main purpose is to permit a form of business enterprise, other than a corporation, in which persons could invest money without becoming liable as general partners for all debts of the partnership. (*Klein v. Weiss* (1978), 284 Md. 36, 50-51, 395 A.2d 126, 135.) The fundamental difference between the liability of general partners and limited partners under these statutes is that the former are responsible *in solido* for the debts and obligations of the firm, without regard to the amounts contributed by them to the capital, while the latter is not personally liable if the statute has been complied with, because his cash contribution is substituted for a personal liability. (*Klein v. Weiss* (1978), 284 Md. 36, 51, 395 A.2d 126, 135.) A limited partnership is in the nature of an investment. (*Kramer v. McDonald's System, Inc.* (1979), 77 Ill. 2d 323, 332, 396 N.E.2d 504.) Through his contribution, the limited partner becomes entitled to share in the profits and losses of the partnership, though his share of the losses will not exceed the amount of capital initially contributed by him to the enterprise. (*Kramer v. McDonald's System, Inc.* (1979), 77 Ill. 2d 323, 332.) The word "contributions" as used in the Uniform Limited Partnership Act (hereinafter referred to as the ULPA) as adopted in Indiana (Ind. Code Ann. §23—4—2—1 *et seq.* (Burns 1972)), is limited to the contribution made by a limited partner at the time of formation of the partnership for the benefit of the partnership's creditors. Section 17 of the ULPA delineates the extent of the limited partner's investment in the business: it makes him liable to the partnership:

> "(1) For the difference between his contribution as actually made and that stated in the certificate as having been made; and
> (2) For any unpaid contribution which he agreed in the certificate to make in the future at the time and on the conditions stated in the certificate."

However, when the limited partner makes the contribution, he is placing

that amount at risk. (*Kramer v. McDonald's System, Inc.* (1979), 77 Ill. 2d 323, 332.) He is not permitted to insure that risk or to guarantee a return to himself by taking some form of security. (*Kramer v. McDonald's System, Inc.* (1979), 77 Ill. 2d 323, 332.) He may not vie with creditors for the assets available to pay the partnership's obligations. Thus a limited partner is prohibited from taking collateral to secure repayment of his capital contribution. To do so would give him an unfair priority over the creditors of the partnership contrary to the express provisions of section 16(1) of the ULPA:

"(1) A limited partner shall not receive from a general partner or out of partnership property any part of his contribution until

(a) All liabilities of the partnership, except liabilities to general partners and to limited partners on account of their contributions, have been paid or there remains property of the partnership sufficient to pay them,

(b) The consent of all members is had, unless the return of the contribution may be rightfully demanded under the provisions of paragraph (2), and

(c) The certificate is cancelled or so amended as to set forth the withdrawal or reduction."

See *Kramer v. McDonald's System, Inc.* (1979), 77 Ill. 2d 323, 332.

■■ ■ The creation of a limited partnership is not a mere private, informal, voluntary agreement as in the case of a general partnership, but is a public and formal proceeding which must follow the statutory requirements of the ULPA. (2 Z. Cavitch, Business Organizations §39.01 (3) (1977).) Section 2 of the ULPA as adopted in Indiana mandates that a certificate of partnership be signed by the parties, acknowledged, and recorded with the county recorder of the county in which the principal place of business of the partnership is located. Section 2 requires that the certificate set forth 14 designated partnership details, including the name of the partnership, the character and location of the business, the identity of the general and limited partners, the terms of the partnership, the cash contributions made by the limited partners, and such additional contributions, if any, which the limited partners have agreed to make in the future. The principal function of the certificate is to give third persons notice of the essential features of the limited partnership. (*Klein v. Weiss* (1978), 284 Md. 36, 52, 395 A.2d 126, 136.) The certificate is a statutory prerequisite to the creation of a limited partnership and until it is filed, the partnership is not formed as a limited partnership. (*Klein v. Weiss* (1978), 284 Md. 36, 53, 395 A.2d 126, 136.) However, the recording requirement is meant to protect the public, and parties to the partnership are not bound by the terms of the certificate simply because it is recorded. *Klein v. Weiss* (1978), 284 Md. 36, 62, 395 A.2d 126, 141.

A partnership is, of course, a contractual relationship to which the principles of contract law are fully applicable. (*Klein v. Weiss* (1978), 284 Md. 36, 63, 395 A.2d 126, 141; 59 Am. Jur. 2d *Partnership* §§19, 33 (1971).) An agreement to form a partnership may be made by the parties, but such an agreement does not of itself create a partnership. (*Klein v. Weiss* (1978), 284 Md. 36, 63, 395 A.2d 126, 141.) One of the essential elements for .formation of a contract is a manifestation of agreement or mutual assent by the parties to the terms thereof. (*Klein v. Weiss* (1978), 284 Md. 36, 63, 395 A.2d 126, 141.) The failure to agree upon or even discuss an essential term of a contract may indicate that the mutual assent required to make or modify a contract is lacking. (*Klein v. Weiss* (1978), 284 Md. 36, 63, 395 A.2d 126, 141.) Whether a partnership exists is always a matter of fact which must depend on the intention of the parties. *Klein v. Weiss* (1978), 284 Md. 36, 63, 395 A.2d 126, 141.

It appears from the argument of defendants-appellants (Brant, Bernard, Scheer and Amber Manor Apartments Partnership) that it is their understanding that "the [agreement] provides that [Allen's] interest, if any, in Amber Manor [Apartments Partnership] would vary depending on whether or not the project was completed by January 31, 1976." It appears that Allen's understanding of the agreement is that his status as a limited partner is unaffected by whether the project was completed by January 31, 1976. The threshold dispute is not whether the project was actually completed but whether the parties intended the formation of the limited partnership to occur prior to, or only upon, the completion of the project.

As we noted above, it appears that Allen's interpretation of the agreement, and perhaps his intention at the time of the execution of the agreement, is that his status as a limited partner is unaffected by whether the project was completed by January 31, 1976. In support of his interpretation, Allen points out that paragraph 4 of the agreement provides that "the New Limited Partners shall not be obligated to make *any* capital contributions unless the Completion of the Project occurs prior to January 31, 1976." (Emphasis supplied.) Paragraph 4 also provides that:

> "If the Completion of the Project does not occur on or before January 31, 1976, then the obligation of the New Limited Partners to:
> (a) make any capital contribution, or
> (b) pay any monies whatsoever with respect to either Amber or the Project, shall terminate."

Allen also points out that the agreement sets forth the extent of the interest of the new limited partners for the calendar years 1974, 1975, 1976 and subsequent years, and with respect to each of those time periods, the

agreement makes different provisions, depending upon whether the project was completed.

We note that Allen's interpretation of the agreement would bestow upon him the status of limited partner and the attendant right to share in the profits and losses of the partnership without making a contribution and placing that amount at risk. Allen cites no authority for this type of agreement, and our research has revealed no authority which would sanction such an agreement, if such an agreement was actually intended by the parties.

As previously noted, it appears to be defendants-appellants' interpretation, and perhaps their intention at the time of the execution of the agreement, that Allen's interest, if any, would vary depending upon whether the project was completed by January 31, 1976. In support of this interpretation they also rely upon paragraph 4 of the agreement and argue that no limited partnership could be formed in the absence of any capital contribution. Although defendants-appellants have not so argued, those portions of the agreement which delineate the extent of the limited partners' interest in the event the project is not completed by January 31, 1976, may have been intended to take effect in the event that Allen and the other designated new limited partners chose, even though not obligated, to make their capital contributions even if the project was not completed by January 31, 1976.

■■ We are also unable to ascertain from the pleadings, depositions, affidavits and documents whether the parties intended the $50,000 to be a contribution to the capital of the limited partnership or a loan to the general partners. As we noted earlier, the word "contributions" as used in the ULPA is limited to the contribution made by a limited partner at the time of the formation of the partnership for the benefit of the partnership's creditors. *Kramer v. McDonald's System, Inc.* (1979), 77 Ill. 2d 323, 330-31; *Silvola v. Rowlett* (1954), 129 Colo. 522, 527, 272 P.2d 287, 290.

Allen's and the other investors' transfer of the $50,000 was made at the time of the alleged formation of the limited partnership. This is revealed in the agreement which provides:

> "Each of the New Limited Partners [Allen and the other investors] agree to loan the General Partners [Brant, Bernard and Scheer], jointly and severally, the amount of money set opposite his name, the aggregate total of which constitutes FIFTY THOUSAND ($50,000.00) DOLLARS, which loan shall be evidenced by a Promissory Note from the General Partners to the New Limited Partners, bearing interest at the rate of 6% per annum due and payable on or before December 31, 1975, subject to acceleration upon the escrow dispursement [*sic*] pursuant to Completion of the Project, secured

by an assignment of collateral reasonably acceptable to Storry, with a net fair market value of at least $50,000.00. The General Partners shall loan such $50,000.00 to Amber to be used for: (a) the redemption of the interest of Salk [*sic*] Properties, Inc., Talandis Construction Company, and Vytantes Talandis in the Partnership; and/or (b) the Project."

The promissory note, executed by Brant, Bernard and Scheer on December 30, 1974, makes reference to the agreement and provides that the note shall be due and payable on or before January 31, 1976, subject to acceleration upon the escrow disbursement. Moreover, it is alleged by Allen, and neither admitted nor denied by defendants-appellants, that $450,000 was placed in escrow. Pursuant to the agreement, the purported loan was due and payable at the completion of the project, on or before January 31, 1976. The disbursement of the $450,000 in the escrow account was also to occur at the completion of the project, on or before January 31, 1976. Since the difference between the $450,000 in escrow and the required capital contribution of $500,000 due from the new limited partners is equal to the $50,000 amount to be returned to the new limited partners, it can be as reasonably inferred that the $50,000 was intended as a loan as it can be inferred that it was intended as an initial capital contribution, which the new limited partners sought to secure in contravention of the ULPA. In addition, we note that after the agreement was executed, and even after this action was commenced, Allen apparently claimed his deductible share of the partnership's loss on his individual tax returns for 1974, 1975, 1976, 1977 and 1978 as reflected by Schedule K-1 of IRS Form 1065.

At oral argument Allen advanced, apparently for the first time, the theory that the "old limited partners"[7] merely "assigned" their limited partnership interests to Allen and the other "new limited partners," and that the requirements of the ULPA do not apply to the "assignment" of a limited partner's interest subsequent to the formation of the limited partnership. Allen has cited no authority for this proposition, and we are unaware of any authority which would support this proposition.

■■ It is our opinion, based upon the foregoing, that the agreement is ambiguous and that the intent of the parties cannot be ascertained from the language of the agreement. The intent of the parties as to whether a partnership was in fact formed and as to the time of the formation of the partnership is in dispute; and fair-minded persons could draw different inferences from the facts not in dispute. Thus a triable issue exists, and summary judgment is inappropriate. *Ruby v. Wayman* (1968), 99 Ill. App. 2d 146, 149-50, 240 N.E.2d 699.

---

[7] We presume this reference is to Brant, Bernard and Scheer.

Accordingly, we reverse the judgment of the circuit court of Cook County and remand the cause for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.

HARTMAN, P. J., and DOWNING, J., concur.