Rose Marie KELSEY, Appellant–
Petitioner,

v.

William T. KELSEY, Appellee–
Respondent.

No. 49A02–9805–CV–454.

Court of Appeals of Indiana.

June 22, 1999.

---

Robert E. Saint, Indianapolis, Indiana, Attorney for Appellant.

Nancy L. Cross, Miroff, Cross & Klineman, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

In July of 1993, Rose Marie Kelsey ("Wife") filed a petition for dissolution of her marriage to William T. Kelsey ("Husband"). In January of 1997, the trial court entered a dissolution decree in which the court ordered Husband to transfer to Wife the general partnership interest he owned in Tudor Lake Apartment Associates ("Tudor Lake"), an Illinois limited partnership. Wife filed an emergency petition in which she alleged that Husband had not complied with the court's order. In February of 1998, the court heard evidence on Wife's emergency petition. On February 24, 1998, the court issued an order in which it determined that Husband had transferred his general partnership interest in the limited partnership to Wife as ordered by the 1997 decree. The 1998 order further stated that the decree meant only that Wife would "be positioned so as to receive any income, distributions or other value" from the partnership. Wife now appeals.

We affirm.

### ISSUES

Wife presents three issues for review which we consolidate and restate as:

1. Whether under the Illinois Revised Uniform Limited Partnership Act, Husband was required to file an amended certificate of limited partnership to transfer his general partnership interest in Tudor Lake to Wife.

2. Whether the trial court's February 1998 order impermissibly modified the January 1997 dissolution decree.

### FACTS AND PROCEDURAL HISTORY

Wife and Husband were married in November of 1965. They had three children during the marriage, all of whom are emanci-

pated. Wife filed her petition for dissolution in July of 1993.

Following the dissolution hearing, the court determined that an unequal property distribution was reasonable because Husband's income potential exceeded Wife's. As a result, the court awarded Wife property valued at $899,628 and Husband property valued at $586,259.

The primary dispute at the hearing was over the value of Husband's general partnership interest in Tudor Lake, an Illinois limited partnership. Husband owned a .5% interest in Tudor Lake and served as trustee for the Natalie Harvey Trust, which also owned a .5% interest. Husband and the Natalie Harvey Trust were the only two general partners of Tudor Lake. Husband testified that his individual .5% interest had a value of less than $50,000, and Wife presented evidence that the value of the interest was between $188,285 and $308,285. The trial court valued Husband's interest at $188,285 and awarded the asset to Wife.

In its decree, the court gave Husband thirty days to choose from the following: (1) Husband could retain his general partnership interest in Tudor Lake and pay Wife its value in cash within ninety days, or (2) Husband could assign his .5% interest to Wife and disassociate himself from the ownership, management or operation of the limited partnership. Husband chose to assign his general partnership interest and obtained the consent of a majority of the limited partners pursuant to the Tudor Lake Limited Partnership Agreement ("Partnership Agreement").[1] Husband also resigned as trustee of the Natalie Harvey Trust.[2] The court extended the time for Husband to transfer his interest to April 12, 1997. On April 11, 1997, Husband filed his notice of compliance with the court order.

Wife then alleged that Husband had failed to comply with the January 1997 decree be-

---

1. Section 7.5.1 of the Partnership Agreement provides that "The General Partners shall not sell, assign or dispose of all or any portion of its/their interest solely in its capacity as General Partner in the Partnership without prior written consent of the Limited Partners holding a majority of interests."

2. Upon Husband's resignation, Wirey Coy Investments, Inc. was appointed to serve as trustee for the Natalie Harvey Trust.

cause he did not file an amended certificate of limited partnership to reflect his withdrawal as a general partner and Wife's admission as a new general partner. After a hearing, the court entered the following findings and conclusions:

1. William T. Kelsey has complied with the requirements of the Decree of Dissolution entered by this Court on January 8, 1997. He has resigned his position as Trustee of the Harvey Trust, and a successor Trustee has been appointed to said Trust. On February 6, 1997, William T. Kelsey assigned his .5% general partnership interest in Tudor Lake Associates, L.P. to his former wife, Rose Marie Kelsey, which assignment was ratified by the limited partners on or before April 11, 1997. Mr. Kelsey filed his Notice of Compliance with this Court on April 11, 1997.

\* \* \* \* \*

3. The technical failure by Mr. Kelsey to amend the Certificate of Limited Partnership did not void the transfer, nor did an absence of an amendment to the certificate cause the partnership interest to revert to his ownership.

4. The Decree, issued on January 8, 1997, required Mr. Kelsey to assign all his interest in the profits, losses, distribution, income and gain, associated with the Tudor Lake Associates Limited Partnership to his former wife, and also required him to disassociate himself from all ownership and control. Whether or not Mrs. Kelsey was made an "acting" general partner of the business and/or an "actual" general partner in the operation is not significant. It was only ordered by the Court that she be positioned so as to receive any income, distributions or other value said partnership was assessed from the marital estate at the time of divorce and distribution.

This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Transfer of Partnership Interest

Wife asserts that Husband failed to transfer his general partnership interest as re-

quired by the January 1997 decree and, thus, that Husband is obligated to pay her the value of his interest. It is undisputed that Husband performed all that was necessary to transfer his interest under the Partnership Agreement. The contested issue is whether Husband was also required to file an amended certificate of limited partnership to complete his withdrawal as a general partner and Wife's admission as a new general partner.

### Standard of Review

Where, as here, the issue presented on appeal is a pure question of law and there are no disputed facts, we review the matter *de novo*. *Reese v. Reese*, 696 N.E.2d 460, 462 (Ind.Ct.App.1998). The applicable statutory framework for our review is the Illinois Revised Uniform Limited Partnership Act ("RULPA"), 805 ILL. COMP. STAT. 210/100 *et seq.* The state of Illinois adopted RULPA on July 1, 1987, and Illinois limited partnerships have been governed by RULPA since that time.[3]

### Revised Uniform Limited Partnership Act

As we have explained, Wife argues that RULPA required Husband, as a general partner, to file an amended certificate of limited partnership to transfer his general partnership interest to her. In response, Husband maintains that the Partnership Agreement, which establishes specific procedures to be followed in order for a general partner to assign his interest in the partnership, controls. In the alternative, Husband asserts that, even assuming the certificate of limited partnership should have been amended to reflect the change in general partners, he lacked authority to file an amended certificate once he had assigned his interest to Wife as provided in the Agreement. We address these arguments in turn.

#### A. Partnership Agreement

■■■ Limited partnerships are a creature of statute, the primary purpose of which is to permit a form of business enterprise, other than a corporation, in which persons can invest money without being personally liable for all partnership debts. *Allen v.*

3. Indiana limited partnerships are also governed by RULPA. *See* IND.CODE § 23–16–1–1 *et seq.*

*Amber Manor Apartments Partnership,* 95 Ill.App.3d 541, 51 Ill.Dec. 26, 420 N.E.2d 440, 444 (1981). The fundamental difference between the liability of general and limited partners is that general partners are responsible for the debts and obligations of the firm, without regard to the amounts contributed by them to the capital, while limited partners are not personally liable if they have substantially complied with the statutory provisions. *Id.*

> [It is well established] that the partners may make any agreement between themselves that they deem desirable so long as it is not in violation of prohibitory statutory provisions, the common law, or public policy. They may establish whatever duties and obligations they wish, and as between them their agreement controls, at least if it is complete and if there are no circumstances which might result in prejudice to creditors. The Uniform Limited Partnership Acts are primarily designed to protect creditors, not partners. So long as the provisions of the agreement are followed, no partner can complain.

59A Am.Jur.2d *Partnership* § 1279 (1987) (footnotes and citations omitted). A limited partnership agreement, however, incorporates the terms of the governing statutes, and by signing it, the partners agree to the provisions so incorporated. 59A Am.Jur.2d *Partnership* § 1283. Provisions of the partnership agreement which "contravene or tend to defeat the purpose of those statutes" will not be enforced. *Id.*

Wife asserts that certain RULPA provisions establish a condition precedent to the assignment of a partnership interest beyond that provided in the Partnership Agreement. In particular, Section 201 of RULPA requires that a certificate of limited partnership be executed and filed with the Secretary of State to form a limited partnership. 803 Ill. Comp. Stat. 210/201; *see Classic Hotels, Ltd. v. Lewis,* 259 Ill.App.3d 55, 197 Ill.Dec. 43, 630 N.E.2d 1167, 1170 (1994). RULPA further requires that the certificate of limited partnership be amended subsequent to certain events. Section 202 of RULPA provides:

> (b) Within 30 days after the happening of any of the following events, an amendment to a certificate of limited partnership reflecting the occurrence of the event or events shall be filed:
>
> > (1) *the admission of a new general partner;*
> >
> > (2) *the withdrawal of a general partner;*
> >
> > (3) the continuation of the business under Section 801 after an event of withdrawal of a general partner;
> >
> > (4) the change in the name of its registered agent or the address of its registered office; or
> >
> > (5) a change in the address of the office at which the records required by section 210 are kept.

805 Ill. Comp. Stat. 210/202 (emphasis added). Additionally, RULPA defines "general partner" as follows:

> (5) "General Partner" means a person who has been admitted to a domestic limited partnership or foreign limited partnership as a general partner in accordance with the partnership agreement *and so named in the certificate of limited partnership* or similar instrument of the state, province, country, or other jurisdiction under which the limited partnership is organized if so required.

805 Ill. Comp. Stat. 210/101 (emphasis added).

Wife also directs us to two cases in support of her assertion that RULPA requires the filing of an amended certificate to complete the assignment of a general partnership interest and that Husband's compliance with the provisions of the Partnership Agreement was insufficient. In *Plaza Realty Investors v. Bailey,* 484 F.Supp. 335, 349 (S.D.N.Y. 1979), the United States District Court, interpreting Indiana's version of the Uniform Limited Partnership Act, held that a person becomes a general partner only after an amendment to the partnership certificate is filed. Additionally, in *Harry David Zutz Ins., Inc. v. H.M.S. Assocs. Ltd.,* 360 A.2d 160, 162 (1976), the Superior Court of Delaware interpreted provisions of Florida's Uniform Limited Partnership Act to require the filing of an amended certificate before a gen-

eral partner may terminate his status as general partner.

However, the court in *H.M.S.* also stated: "Some courts have held that, *as between parties to a limited partnership agreement*, the agreement is enforceable even though all statutory requirements have not been strictly complied with." *Id.* at 163 (citations omitted) (emphasis added). In fact, "[i]n a majority of cases, the rights of the members of a limited partnership are determined almost entirely by construction of their agreement, with the court making little or no reference to partnership law." 59A AM.JUR.2D *Partnership* § 1283.

■ There is an important distinction between RULPA's protection of the rights of third parties and the rights as between the partners in a limited partnership. The purpose of the recording requirements is to notify third parties which partners are entitled to the "special status" of a limited partner. *H.M.S.*, 360 A.2d at 163. Thus, when the rights of a creditor are not involved, the partners are usually held to their agreement unless they can show they were injured by the fact that the certificate of limited partnership was not amended in a timely manner. 59A AM.JUR. 2D *Partnership* § 1278; *see Fidelity Trust Co. v. BVD Assocs.*, 196 Conn. 270, 492 A.2d 180, 185 (1985) (failure to file amendment did not invalidate admission of new general partner).

■ In this case, the Partnership Agreement determined the rights of the members of the limited partnership. According to the terms of that agreement, Husband was required only to obtain the consent of a majority of the limited partners in order to assign his general partnership interest. Section 7.5.1 of the Partnership Agreement neither conflicts with nor contravenes the assignment provision under RULPA. *See* 805 ILL. COMP. STAT. 210/702 ("Except as provided in the partnership agreement, a partnership interest is assignable in whole or in part."). Wife is not a third party, and she has not shown that she has been injured by the unamended certificate of limited partnership. Thus, we conclude that, as between the parties, the Partnership Agreement governed Husband's assignment to Wife.

### B. Authority to Amend the Certificate of Limited Partnership

■ Although we have determined that the assignment of the partnership interest was governed by the Partnership Agreement, RULPA also requires that the certificate of limited partnership be amended within thirty days after the withdrawal or admission of a general partner. The language of Section 202 clearly states that within thirty days after either the withdrawal or admission of a general partner, an amendment to the certificate of limited partnership *shall* be filed. *See* 805 ILL. COMP. STAT. 210/202(b)(1)-(2) (emphasis added). We now address Husband's contention that once he assigned his interest in compliance with the terms of the Partnership Agreement, he lacked authority to amend the certificate of limited partnership.

Section 202 places the responsibility of amending the certificate of limited partnership to a general partner who becomes aware that any statement in a certificate of limited partnership is false or that any facts described therein have changed. 805 ILL. COMP. STAT. 210/202(d). Regarding withdrawal of general partners, 805 Illinois Compiled Statutes 210/402 provides in relevant part:

Events of Withdrawal. Except as approved by the specific written consent of all partners at the time, *a person ceases to be a general partner of a limited partnership upon the happening of any of the following events:*

(1) the general partner withdraws from the limited partnership as provided in Section 602.

(emphasis added). According to Section 602, a general partner may withdraw from a limited partnership at any time by giving written notice to the other partners. 805 ILL. COMP. STAT. 210/602. In addition, RULPA provides that "except as provided by the partnership agreement, a partner ceases to be a partner upon the assignment of all of his or her partnership interest." 805 ILL. COMP. STAT. 210/702.

Here, Husband informed the partners of Tudor Lake that pursuant to a court order, he was required to transfer his general part-

nership interest to Wife and to "disassociate himself from the ownership,. management or operation" of Tudor Lake. Husband then received the consent of a majority of the limited partners to transfer his interest to Wife. At that point, Husband had performed all that was required by the Partnership Agreement to withdraw as a general partner and assign his interest to Wife. Husband also had ceased to be a general partner in Tudor Lake once a majority of the limited partners had consented to the transfer of his interest. Because Section 202(d) places responsibility for amending the certificate on the general partners, we conclude that Husband, who was no longer a general partner, lacked authority to file an amendment reflecting the change in partnership.

### Issue Two: Modification of Original Decree

Next, Wife asserts that the trial court's 1998 order impermissibly altered the 1997 decree. In particular, Wife alleges that the 1998 order modified the interest she was to receive from Husband. Husband counters that the court's 1998 order merely clarified the decree.

 All questions regarding the adjudication of marital property rights are put to rest by the divorce decree. *Brownsing v. Brownsing,* 512 N.E.2d 878, 880 (Ind.Ct.App. 1987), *trans. denied.* The legislature's intent was for the court, at the time of dissolution, to settle all the parties' property rights with certainty. *Wilhelm v. Wilhelm,* 397 N.E.2d 1079, 1081 (Ind.Ct.App.1979). Stated differently, dissolution contemplates a final separation of the parties and a final division of their property. *Id.* An order as to property disposition entered in a dissolution decree pursuant to Indiana Code § 31–1–11.5–11 [4] may not be revoked or modified absent a showing of fraud. *Pactor v. Pactor,* 181 Ind.App. 329, 332, 391 N.E.2d 1148, 1150 (1979).

The trial court's 1997 decree provides in relevant part:

65. With respect to the foregoing property division *Wife shall receive in her distributive share, Husband's .5% interest in Tudor Lake Apartments at the value of* One Hundred Eighty Eight Thousand dollars ($188,285.00) *and the Rushville building held by AEA Enterprises, Inc., at the value of Fifteen Thousand Dollars ($15,-000.00).* Husband shall effectuate the transfer of said assets to her within thirty (30) days of this Decree.

(emphasis added). Thereafter, in its 1998 order, the court determined that "[i]t was only ordered by the Court that [Wife] be positioned so as to receive any income, distributions or other value" from the partnership.

In support of its "clarification" of the nature of the asset awarded to Wife, the court relied on 805 Illinois Compiled Acts $^{210}$/$_{02}$, which provides:

Assignment of a Partnership Interest. Except as provided in the partnership agreement, a partnership interest is assignable in whole or in part. *An assignment of a partnership interest does not dissolve a limited partnership or, unless otherwise provided in the partnership agreement, entitle the assignee to become a partner or to exercise any rights of a partner.* Except as provided in the partnership agreement, a partner ceases to be a partner upon the assignment of all of his or her partnership interest.

(emphasis added). Under the Partnership Agreement, "[a]ssignment by a General Partner of any portion of its Interest in the Partnership pursuant to section 7.4 shall not dissolve the Partnership, *and the Partnership shall continue by and between the Limited Partners and the assignee General Partner, which may be admitted to the Partnership as a General Partner and successor to the General Partner(s)."* (emphasis added).

 Although the Partnership Agreement allows an assignee general partner to be admitted as a new general partner, the 1997 decree did not require, and could not have required, that Wife become a general partner in Tudor Lake. The trial court had jurisdiction over Husband and his general partnership interest, but the court lacked jurisdiction over Tudor Lake and the other general and limited partners and was without

---

4. Now codified at Indiana Code § 31–15–7–4.

authority to order that Wife replace Husband as a new general partner. *See In re Marriage of Dall,* 681 N.E.2d 718, 723 (Ind.Ct. App.1997) (divorce decree does not affect rights of nonparties). Indeed, in the 1997 decree the court expressly stated that it was "mindful" that its jurisdiction did not reach nonparties. We conclude that the 1998 order merely clarifies and reaffirms that the 1997 decree provided only that Husband transfer his interest in the asset of Tudor Lake and did not purport to require that Wife be admitted as a general partner.

## CONCLUSION

We conclude that the Partnership Agreement governed Husband's transfer of his general partnership interest to Wife. We further conclude that the trial court correctly determined that Husband had complied with the court's 1997 decree and that its 1998 order properly clarified the original decree.

Affirmed.

SHARPNACK, C.J., and BAILEY, J., concur.

