CANDLEWICK LAKE UTILITIES CO., Plaintiff-Appellant, *v.*
PAZ.C. QUINONES *et al.*, Defendants-Appellees.

Second District   No. 78-528

Opinion filed March 17, 1980.

Rosenthal & Schanfield, and Alan E. Sohn, of Sudak, Grubman, Pritikin, Rosenthal and Feldman, both of Chicago, for appellant.

Michael M. Ushijima, of Rosemont, for appellees.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, Candlewick Lake Utilities Co. (the utility), appeals from a series of orders issued by the Circuit Court of Du Page County entering judgments in favor of defendants, who are owners of lots in the Candlewick Lake Subdivision, on the utility's suits to recover allegedly unpaid sewer and water availability charges.

The utility's complaints alleged that it was authorized by the Illinois Commerce Commission to provide water and sewer service to the subdivision. The rates for the utility services were alleged to be $5 per month for the availability of water service and $4 per month for the availability of domestic sanitary sewer service. It was further alleged that defendants had entered into agreements with Candlewick Lake Associates (the developer) to purchase lots in the subdivision, located in Boone County, Illinois.

The purchase agreements provided in Clause 6 that "buyer for himself and his successors in title accepts and agrees to abide by and faithfully observe all restrictions, covenants, and provisions contained in the Declaration of Restrictions for the Candlewick Lake Subdivision." The declaration of restrictions provided that the buyer of a lot "agrees to pay to the public utility serving the Candlewick Lake Subdivision, its successors, assigns, lessees or licensees" a minimum monthly availability charge for water and sewer service. "Availability" does not mean that the owner is actually using any sewer or water services, but is defined in the rate schedule filed with the Illinois Commerce Commission to mean that mains or lines are located "in front of or adjacent to the Lot." The utility alleged that water and sewer services have been available since October 15, 1974, that defendants owe it past due and unpaid charges for the availability service, and that attempts have been made to collect the amount due.

The defendants answered denying many of the allegations in the complaint and asserting that the utility was part of a land fraud scheme which was presently the subject of other litigation involving Candlewick Lake Subdivision.

Defendants unsuccessfully sought a continuance based on a pending challenge to the availability rates before the Illinois Commerce

Commission. The utility's motion for summary judgment was denied, and the actions against the defendants were consolidated for trial. At trial evidence was introduced that the utility had filed a schedule of rates with the Illinois Commerce Commission. (Ill. Rev. Stat. 1973, ch. 111 2/3, par. 33.) The utility's collection manager testified that he had submitted bills to defendants, but that no payments had been made. Another witness, Dennis Leslie, who had been employed as the on-site manager for the utility, and prior to that as project manager for the developer, testified that water and sewer services were available to each lot by approximately September 1974. Leslie testified that the initial capacity of the sewage treatment plant was 100,000 gallons per day or service for approximately 1,000 people. He further testified that the system was built to be expandable. There are approximately 2,450 lots in the subdivision. Leslie also testified that the water well had a capacity of 300 gallons per minute. Leslie later testified that increased water needs could be met by installing a larger pump and a larger line feeding into the service main.

Several of the defendants testified concerning the circumstances surrounding their purchase of lots in Candlewick. Most of these witnesses stated that they were not informed about utility charges at the time of sale. Some defendants claimed to have signed a purchase contract without first reading its provisions. Another claimed to have read and signed the front of the sales contract without knowledge of any restrictions on the reverse side. Other defendants testified that key documents were not supplied at the time the contracts were signed. However, the signed contracts recite that these documents had been supplied.

At the conclusion of the trial the court entered judgment for the defendants. The trial court found that none of the defendants had contracted with the utility, that the rates were unreasonable, and that the utility was charging availability rates for services that were not really available. The utility appeals.

Two issues are presented by this appeal: (1) whether the trial court erred in seeking to determine the reasonableness of the rates charged where the defendants had not exhausted their administrative remedies, and (2) whether the utility is a third-party beneficiary of the purchase and sale agreements between the defendants and the developer.

I.

The utility contends that the correct procedure for challenging utility rates is to file an appeal for judicial review of the Illinois Commerce Commission decision which established the challenged rates. (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 72.) The utility asserts that unless such an appeal is taken, the issue of the reasonableness of a utility's rates is within

the exclusive jurisdiction of the Illinois Commerce Commission. The defendants concede that this is the correct procedure to follow in establishing utility rates in the first instance. They argue, however, that the trial court acted properly because it was not establishing a rate, but only finding that the existing rates when put into effect were unjust and unreasonable.

■■ Generally, the Illinois Commerce Commission has exclusive initial jurisdiction to determine whether rates charged by a utility for its services are reasonable or excessive. (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 76; *State Public Utilities Com. ex rel. City of Springfield v. Springfield Gas & Electric Co.* (1919), 291 Ill. 209, 125 N.E. 891; *Gowdey v. Commonwealth Edison Co.* (1976), 37 Ill. App. 3d 140, 147, 345 N.E.2d 785, 792.) Courts may review the actions of the commission on appeal (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 72) to determine whether the findings and conclusions of the commission are against the manifest weight of the evidence. There are cases which indicate that where sufficient facts are alleged to support an allegation of fraud, a court of equity may intervene regardless of the usual necessity for exhaustion of administrative remedies. (See, *e.g., Adler v. Northern Illinois Gas Co.* (1965), 57 Ill. App. 2d 210, 206 N.E.2d 816.) Further, it has been held that an equity court cannot be deprived by the legislature of the power to issue injunctions to prevent irreparable injury unless a statutory remedy is substituted which gives the same measure of relief. (*Peoples Gas Light & Coke Co. v. Slattery* (1939), 373 Ill. 31, 42, 25 N.E.2d 482, 489.) The trial court, in its order, did state that the utility was charging availability rates for a service that was not really available and that "it [was] a complete fraud." Further, the court said that when it is asked to enforce a schedule by a utility, it is not bound to enforce an unjust, unreasonable or unfair schedule.

In our view, the trial court erred in seeking to decide whether the rates charged by the utility were unreasonable. First, although the court stated in its order that the charging of monthly fees for the availability of water and sewer service was fraudulent because the service was not really available, this finding is not supported by the evidence. The defendants made only a general allegation of fraud in their answer and did not allege or prove specific facts to support a fraud theory against the utility. It is axiomatic that general conclusions of fraud are not sufficient in a pleading and that fraud is never presumed but must be shown by allegation of facts from which fraud is a necessary or probable inference. (*DiSanto v. City of Warrenville* (1978), 59 Ill. App. 3d 931, 937-38, 376 N.E.2d 288, 293.) In contrast to the general allegations of the defendants, the utility offered specific testimony that service was available. It was established that the subdivision contained approximately 2,450 lots, that the present sewage capacity was 100,000 gallons a day or the equivalent of 1,000 people, and

that the water capacity was 300 gallons per minute. There was also testimony that the system was designed to be expandable. There is no indication in the record that the capacity of the system as it presently stands has been reached so that the services in fact are unavailable. There is no evidence then that the utility is charging for a service that it is not providing. There is also no showing of any irreparable injury that would be incurred by the defendants if they were required to proceed through proper administrative channels rather than through the judicial system to prosecute their claim that the rates as applied are unreasonable.

■ The defendants assert that the trial court has jurisdiction pursuant to section 32 of "An Act concerning public utilities" (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 32) to find that a particular rate is unreasonable, and therefore prohibited. This section provides that "[a]ll rates or other charges made, demanded or received by any public utility * * * shall be just and reasonable. Every unjust or unreasonable charge * * * is hereby prohibited and declared unlawful." When read in conjunction with the other provisions of "An Act concerning public utilities," however, this provision does not provide support for a trial court to determine in the first instance whether a rate is unreasonable, absent fraud or allegations of irreparable injury that would support the exercise of the court's equitable powers. The whole scheme of the act in question is to provide regulation in the first instance by the Commerce Commission, which is empowered to hold investigations, inquiries, or hearings. Judicial review is appropriate to determine if the resulting decisions are unsupported by the evidence or outside of the commission's jurisdiction. Ill. Rev. Stat. 1977, ch. 111 2/3, pars. 64, 72.

■ In *New Landing Utility, Inc. v. Illinois Commerce Commission* (1977), 58 Ill. App. 3d 868, 374 N.E.2d 6, *supp. op.* (1978), 58 Ill. App. 3d 868, 375 N.E.2d 578, this court noted that the Illinois Commerce Commission has the power to determine the reasonableness of utility availability charges under its rate-setting authority. In light of the commission's initial jurisdiction in this area, we hold that it was error for the trial court to determine the reasonableness of the utility's availability rates in an action brought by the utility for nonpayment of charges. Thus we find that the trial court incorrectly ruled for the defendants on this basis. We further hold that the trial court's finding that sewer and water services are not available is against the manifest weight of the evidence.

## II.

The trial court also found that none of the defendants had contracted with the utility. The utility, however, contends that it is a third-party beneficiary of the defendants' contracts with the developer. The defendants argue that a third-party beneficiary's rights are entirely

dependent on the contract between the promisor and the promisee, and that if the contract between those parties fails, the only means of recovery for a third party would be *quantum meruit*. The defendants further urge that on the facts of this case, the utility could not recover on a theory of *quantum meruit*.

■ A third person not a party to a contract may sue thereon if a benefit is direct to him, and not just an incidental benefit to him arising from the contract. (*Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 178 N.E.2d 498; *Kravitz v. County of Lake* (1978), 62 Ill. App. 3d 101, 379 N.E.2d 126.) Each case depends upon the intention of the parties as it appears from the contract and the circumstances surrounding the parties at the time of the contract's execution. (*Parrett.*) It is not necessary that a third person (not a party to the contract) to be benefited by a contract be named therein if he is otherwise sufficiently described or designated. *Novosk v. Reznick* (1944), 323 Ill. App. 544, 548, 56 N.E.2d 318, 320; *Gothberg v. Nemerovski* (1965), 58 Ill. App. 2d 372, 385, 208 N.E.2d 12, 20.

■ Defendants point out that the rights of a third-party beneficiary are tied to the underlying contract and suggest that the contracts between them and the developer are void or voidable as a result of fraud by the developer or as a result of a breach of contract. However, the trial court did not find that the developer—as opposed to the utility—had engaged in any fraudulent practice. At trial, the utility established that each defendant had entered into a purchase/sale agreement with the developer, and that the agreements incorporated by reference the declaration of restrictions for the Candlewick Lake Subdivision. That declaration provided that the buyer "agrees to pay to the public utility serving the Candlewick Lake Subdivision * * *" a minimum monthly availability charge for water and sewer service. Although the utility is not specifically named, it is defined with sufficient specificity so as to be identifiable. From the terms of the contract, it is clear that the intent of the parties was that the utility servicing the subdivision, which is currently the plaintiff, Candlewick Lake Utilities Company, should receive payment from the lot owners for the availability of water and sewers. In sum, we hold that the utility is a third-party beneficiary to the purchase and sale agreements between the developer and the defendants.

For the foregoing reasons the orders of the Circuit Court of Du Page County are reversed, and these causes are remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

SEIDENFELD, P. J., and NASH, J., concur.