**Harold D. JENKINS and Sarah Jenkins, Appellants (Defendants Below),**

v.

**NEBO PROPERTIES, INC. and Painted Hills Utility Corp., Appellees (Plaintiffs Below).**

No. 1–1181A327.

Court of Appeals of Indiana, First District.

Sept. 2, 1982.

Rehearing Denied Oct. 6, 1982.

Philip C. Thrasher, Anthony W. Mommer, Krieg, DeVault, Alexander & Capehart, Indianapolis, for appellants.

James J. Stewart, Stewart, Irwin, Gilliom, Fuller & Meyer, Indianapolis, for appellees.

ROBERTSON, Judge.

Harold D. Jenkins and Sarah Jenkins (Jenkins), defendants-counter claimants, appeal the trial court's decision granting summary judgment in favor of Nebo Properties, Inc. (Nebo) on its claim for breach of a realty contract and granting summary judgment in favor of Nebo and Painted Hills Utility Corporation (Utility) on Jenkins' counterclaim for breach of contract and fraud which sought actual and punitive damages. The judgment awarded $939.55 plus costs to Nebo.

On appeal, Jenkins raise several issues; we will reach three of the issues which involve reversible error. They argue the trial court erred by interpreting two contracts and determining that monthly water availability charges were owed to Nebo rather than Utility. In a related argument, Jenkins assert the trial court erred by determining that the water availability charges were not subject to approval by the Indiana Public Service Commission (PSC). They also argue there were genuine issues of material fact which should have precluded summary judgment on their counterclaim for fraud. We agree with Jenkins' arguments, although not for precisely the same reasons. We reverse the trial court's judgment and remand the case for further action.

Because this appeal involves cross motions for summary judgment, we think it is appropriate to restate the criteria for appellate review before examining the facts.

When reviewing the granting of a summary judgment, this Court will only look to see whether there are any genuine issues of material fact and whether the trial court correctly applied the law. *Krueger v. Bailey*, (1980) Ind.App., 406 N.E.2d 665. The party seeking the summary judgment has the burden of establishing that there are no material facts in controversy and any doubt will be resolved against the movant. *Ang v. Hospital Corp. of America*, (1979) Ind.App., 395 N.E.2d 441. The evidentiary matters before the court are, therefore, to be construed in a light most favorable to the non-moving party. *Krueger, supra.* Even if the facts are not in dispute, a summary judgment is inappropriate when the information before the court reveals a good faith dispute as to the inferences to be drawn from those facts. *Hale v. Peabody Coal Company*, (1976) 168 Ind.App. 336, 343 N.E.2d 316. *R.R. Donnelley & Sons v. Henry-Williams, Inc.*, (1981) Ind.App., 422 N.E.2d 353.

Additionally, facts alleged by the non-moving party are accepted as true. *English Coal Co., Inc. v. Durcholz*, (1981) Ind.App., 422 N.E.2d 302. Keeping this criteria in mind the following evidence is before us.

The Jenkins attended a promotional dinner conducted by the Painted Hills Development Company [1] in the spring of 1970. The company was marketing lots in a subdivision in Morgan County. As a result, Jenkins accepted an invitation to view the property on May 3, 1970. They spent approximately 1½ to 2 hours with a salesman, James Mask. Ultimately, Jenkins decided to purchase a lot, numbered 972–C, and signed an "Acquisition Agreement." Mask signed for Painted Hills Development Company.

---

1. Painted Hills Development Company was a partnership composed of Nebo Properties, Inc. and Indiana Lakes and Lands, Inc. During the events underlying this appeal, the partnership was dissolved and Nebo succeeded to all the partnership's rights.

The contract provides a purchase price of $3,895.00. As a promotional technique, this amount was discounted $500.00 because Jenkins signed the agreement on the day they first viewed the lot. The contract reflects cash downpayments of $395.00 on May 3, 1970 and $1,000.00 on May 17, 1970, leaving a balance of $2,000.00. The balance was financed for 48 months at 12½% annually with payments of $53.33 beginning June 15, 1970, leaving a total balance of $2,559.84.

The contract also contained the following provision:

In consideration of the like agreements of other purchasers owners of lots in Painted Hills Subdivision and in the development and maintenance of a water supply system, the PURCHASER agrees to abide by the conditions and stipulations contained in the application of water service agreement which is attached hereto and to be considered a part of this contract with like effect and enforceability as if contained herein verbatim.

The application referred to in the Acquisition Agreement reads:

## PAINTED HILLS UTILITIES CORPORATION

## APPLICATION FOR WATER SERVICE

In consideration of similar applications and agreements of other lot purchasers/owners in Painted Hills Development in Morgan County, Indiana, all of whom are mutually interested in the development and maintenance of an adequate water supply system, and to encourage said Painted Hills Utilities Corporation to develop and install facilities and water service for said development area and to the following described lot(s), Applicant(s) irrevocable hereby agree(s) as follows:

1. Applicant(s) hereby makes application for water service and connection to Lot(s) __972 C__ of Painted Hills Development Subdivision; and

2. Applicant(s) hereby agree(s) to pay an estimated water charge of $50.00 per year, commencing with the first month after water becomes available to supply said lot(s), or to pay such flat or metered rates for water service and fees as may be approved by the Indiana Public Service Commission; and agrees that utilities shall have optioned of tendering the bills monthly, quarterly, semi-annual or annually.

3. Applicant(s) hereby tenders $150.00 as a connection fee for the said utility to lay, install and connect a water line from the above lot(s) to make installations and maintain such facilities as are herein contemplated; and shall have the option of tendering its monthly, quarterly, semi-annually [sic] or annually.

4. That all charges, fees, rules and regulations for installation and water services shall be subject to the approval of the Indiana Public Service Commission as same may from time to time be amended.

5. That should Applicant(s) at any time fail to pay the charges above within 10 days after billed or fail to abide by the rules and regulation of said Painted Hills Utilities Corporation, said Utility shall thereupon have a lien against said lot(s) described herein to assure such payment and compliance, which lien shall be enforceable in any court of Law or Equity having jurisdiction; and

6. That Applicant(s), their heirs, legal representatives, successors and assigns shall be bound by this agreement for so long as water service is available for use of Applicant(s).

7. The fee is due and payable in __one__ consecutive monthly payments of $150.00, commencing on the 1 day of September, 1970.

This application dated this 3 day of May, 1970.

Harold D. Jenkins
Sarah H. Jenkins
Applicant(s)

Jenkins elaborated on the circumstances surrounding their decision to sign the documents. They explained that they only talked with Mask and had no other contact

with either the development company or the utility. Harold Jenkins read the documents and asked if he could have a lawyer examine them. Mask responded that Jenkins would lose their $500.00 discount if they did not sign on May 3, 1970. Jenkins also requested clarification of the agreements in regard to charges in the Application for Water Service, particularly the $150.00 connection fee. Mask explained Jenkins were signing an agreement providing the right to run a water line down the middle of the street. In response to a question from Harold Jenkins, Mask stated there would be no additional charges until they built on the lot. Jenkins informed Mask they were buying the lot as an investment and did not intend to build.

Subsequently, Jenkins paid the $150.00 connection fee required by the application for water service on September 1, 1970. At approximately that time, Jenkins began to receive water bills of $7.50 per month from Nebo. Sarah Jenkins paid six of these bills, then Harold Jenkins directed his wife to cease payment. These payments were referred to as "water availability charges" during subsequent litigation.

Apart from the water charges, Jenkins paid their monthly purchase payments until May 15, 1974, when they received a copy of the Acquisition Agreement marked paid from American Fletcher National Bank. The Acquisition Agreement had been assigned to the bank for collection on May 20, 1970. Jenkins, however, did not receive a deed. After contacting the bank and discovering it did not hold the deed, Jenkins began to make inquiries about who did hold it.

In March, 1976, Jenkins received a letter from John Hurt who served as president of Nebo, Painted Hills Development Company, and Painted Hills Utility Corporation. The letter stated Jenkins had paid their contract and were entitled to a deed, but that the deed would be withheld because they had not paid water charges.

Ultimately, on October 17, 1978, Nebo brought suit to recover the unpaid water bills and Jenkins counterclaimed. During the litigation, Utility was joined as a plaintiff-counter defendant. Both sides filed motions for summary judgment resulting in judgment in favor of Nebo and Utility.

The trial court made specific findings of fact and conclusions of law in entering summary judgment. Although these findings and conclusions are useful and facilitate our review, they are not required by Ind. Rules of Procedure, Trial Rule 56. *Fort Wayne Patrolman's Benev. Ass'n v. City of Fort Wayne*, (1980) Ind.App., 408 N.E.2d 1295, *reh. den.*, 411 N.E.2d 630. Our standard of review, discussed *infra*, is therefore the same standard utilized by the trial court. *Number One Beverage, Inc. v. Miller Brewing Company*, (1982) Ind.App., 437 N.E.2d 508.

Essentially, the trial court made findings of fact that the Acquisition Agreement and Application for Water Service constituted one contract which obligated Jenkins to pay water charges as part of the purchase price. The court then determined that the water charges were: 1) the $150.00 "water connection fee" which obligated Nebo to connect a water line from Jenkins' property to the Utility's main line and 2) "payment in the sum of $50.00 per year, or a monthly payment of $7.50, the minimum or 'unmetered flat rate for the availability and use of water' as approved by the Indiana Public Service Commission, on May 3, 1970."

Additionally, the trial court found "as it was understood and agreed by and between the parties to the litigation in question that if and when the water service was connected to said Lot 972C, owned by said defendants, that a meter would be installed and thereafter said defendants would be obligated to pay to said Water Company the metered water rate as established and approved by the Indiana Public Service Commission for said Water Company."

From its findings of facts, the trial court drew the legal conclusion that the contract was unambiguous and therefore, subject to construction by the court as a matter of law. The court especially emphasized that a party to a contract is not relieved of

duties simply because he failed to read the contract. The trial court relied upon three paragraphs from the Acquisition Agreement to justify Nebo's failure to provide Jenkins a warranty deed.

Upon the PURCHASERS making the payments as set out on the schedule below and performing all of the covenants hereinafter set out or referred to on PURCHASER'S part to be performed, and in consideration thereof, SELLER agrees to convey to PURCHASER by properly executed Warranty Deed the fee simply title to said lot .... *Paragraph 1 of Acquisition Agreement.*

It is understood by PURCHASER and SELLER that this agreement, including the provisions and restrictions listed or mentioned on the reverse side hereof, which are hereby adopted by reference as if fully set out on the fact of this agreement, and all instruments referred to herein, contain the whole agreement between the PURCHASER and SELLER and that no representations, oral, verbal or otherwise have been made or relied upon which are not contained or mentioned herein. *Paragraph 5 of Acquisition Agreement.*

In consideration of the like agreements of other purchasers/owners of lots in Painted Hills Subdivision and in the development and maintenance of a water supply system, the PURCHASER agrees to abide by the conditions and stipulations contained in the application of water service agreement which is attached hereto and to be considered a part of this contract, with like effect and enforceability as if contained herein verbatim. *Paragraph 11C of Acquisition Agreement.*

In light of these findings, the trial court also concluded "that there has been no proof of fraud ...." This appeal followed.

Perhaps the extensive and confusing facts presented thus far can be given order by focusing on two questions. First, who were the parties to the Application for Water Service? Second, what charges for service were contemplated by the agreement and which charges required PSC approval?

Resolution of these questions requires us to construe the contracts involved, initially the Application for Water Service and then the Acquisition Agreement which incorporates the application.

The construction of a written contract is generally a question of law for the trial court, summary judgment being particularly appropriate since there are no issues of fact. However, if reasonable men would find the contract susceptible of more than one construction, ambiguity exists making summary judgment inappropriate, it being the responsibility of the trier of fact to ascertain the extrinsic facts necessary to interpret the contract. *Kleen Leen, Inc. v. Mylcraine,* (1977) Ind. App., 369 N.E.2d 638. If, on the other hand, the ambiguity arises, not because of extrinsic facts, but by reason of the language used, construction of the ambiguous contract is a question of law for the trial court. *Indiana Broadcasting Corp. v. Star Stations,* (1979) Ind.App., 388 N.E.2d 568, 572. Thus, whenever summary judgment is granted based upon the construction of a contract, the trial court has either determined as a matter of law that the contract is not ambiguous or uncertain, *Kleen Leen, Inc., supra,* 369 N.E.2d at 641, or that the contract ambiguity, if it exists, can be resolved without the aid of factual determinations. *Indiana Broadcasting Corp., supra,* 388 N.E.2d at 572.

*Ancich v. Mobile Oil Corp.,* (1981) Ind.App., 422 N.E.2d 1320, 1321.

■ The Application for Water Service is clear and unambiguous in specifying the parties to the contract. The Utility is "to lay, install, and connect a water line ... and maintain such facilities" in exchange for the $150.00 connection fee paid by Jenkins and specified in paragraph 3. In regard to the water charges in paragraph 2 of the contract, the Utility has the option of billing "monthly, quarterly, semi-annual [sic] or annually." Paragraph 5 provides that if the applicants fail to pay the charges or abide by the Utility's rules and regula-

tions, the Utility has a lien against lot 972C to assure compliance. The application is clearly a contract between Jenkins and Utility.

Having examined the Application for Water Service, we now turn to its incorporation into the Acquisition Agreement. Again, the Acquisition Agreement contained the following language.

In consideration of the like agreements of other purchasers/owners of lots in Painted Hills Subdivision and in the development and maintenance of a water supply system, *the PURCHASER agrees to abide by the conditions and stipulations contained in the application of water service agreement which is attached hereto and to be considered a part of this contract, with like effect and enforceability as if contained herein verbatim.*

(Emphasis added.)

This language constitutes a promise by Jenkins to Nebo that they will abide by the terms of the application. The language also reflects the parties intent to allow Nebo to enforce the promise. Although the context is a bit unusual, the promise is simply a third party beneficiary contract, a promise by Jenkins to Nebo for Utility's benefit. *Candlewick Lake Utilities Co. v. Quinomes,* (1980) 82 Ill.App.3d 98, 37 Ill. Dec. 479, 402 N.E.2d 369 (utility as a third party beneficiary.); *See, Fiat Distributors, Inc. v. Hidbrader,* (1978) Ind.App., 381 N.E.2d 1069 and *Jackman Cigar Mfg. Co. v. John Berger & Son Co.,* (1944) 114 Ind.App. 437, 52 N.E.2d 363, (both cases discuss the theory of third party beneficiary contracts.), 17 Am.Jur.2d Contracts § 297, § 302 *et seq.* (1964). The scope of Jenkins' promise to Nebo is therefore defined by the terms of the Application for Water Service.

■ Examining the Application for Water Service, we find an ambiguity arising from language used in paragraphs 2 and 4. They read:

2. Applicant(s) hereby agree(s) *to pay an estimated water charge of $50.00 per year, commencing with the first month after water becomes available to supply said lot(s), or to pay such flat or metered rates for water service and fees as may be approved by the Indiana Public Service Commission;* and agrees that utilities shall have optioned of tendering the bills monthly, quarterly, semi-annual or annually.

4. That *all charges, fees, rules and regulations for installation and water services shall be subject to the approval of the Indiana Public Service Commission* as same may from time to time be amended. (Emphasis added.)

Paragraph 2 appears to provide for alternative water charges, either $50.00 per year after water becomes available *or* such flat or metered rates and fees as the PSC approves. On the other hand, paragraph 4 provides that *all* charges and fees for installation and water service shall be subject to PSC approval. Reading these provisions so that they harmonize rather than conflict, which we are required to do, *R. R. Donnelley & Sons v. Henry-Williams, Inc., supra,* and also construing the ambiguity against the party who prepared the contract, *English Coal Co. Inc. v. Durcholz,* (1981) Ind. App., 422 N.E.2d 302, we conclude that PSC approval was necessary for all charges levied pursuant to the Application for Water Service.

The next step is to examine what charges the PSC had approved for Utility at the time the contract was signed and to examine any rates subsequently approved. All parties rely upon two PSC rulings to support their interpretations of proper charges. On March 22, 1974, the PSC in Cause No. 3340 issued an order completing an investigation of the development companies collection of water availability charges. The investigation was initiated in response to complaints from property owners in Painted Hills subdivision. The PSC found that Utility was authorized to charge the following rates as of March 17, 1970:

An unmetered flat rate of $7.50 per month for the *availability and use* of water for sprinkling, personal and household consumption, regardless of gallons consumed; or

A meter rate for the *availability and use* of water for general use, sprinkling, and other personal household and non-manufacturing uses having a minimum monthly rate of $7.50 per month which minimum monthly rate shall include the use of not to exceed 3,000 gallons, plus an additional charge of $1.00 per 1,000 gallons, or any fractional part thereof, in excess of 3,000 gallons. (Emphasis added.)

The PSC ordered Utility to charge only these rates.[2] The PSC carefully limited its order stating:

Painted Hills Development Company, although often referred to throughout the course of these proceedings in testimony and by certain exhibits sponsored and admitted on behalf of Respondent, is not a formal party to this Cause, and it is entirely possible that it could not be made a party . . . .

. . . . .

We, therefore, cannot find that the development company is a public utility and, by that reasoning, cannot go further to consider the question of whether the availability and water connection charges sought by the development company and complained of are within the ambits of our jurisdiction . . . .

We refuse . . . to decide certain questions of a seemingly contractual nature which have arisen and pertain to the obligation allegedly imposed on the complainants to pay water availability charges and connection fee charges pursuant to an Acquisition Agreement between Painted Hills Development Company and the complainants. We, therefore, do not express any opinion on the availability charge and the water connection charge contemplated by the development company agreements

with respect to the complainants and other landowners in the affected area.

Additionally, Nebo and Utility concede that the PSC held it would be improper for Utility to collect the water availability charges.

Thus, the charges approved by the PSC for Utility were for the availability and use of water, not merely availability, nor was the connection fee, $150.00, approved by the PSC. It is undisputed that Jenkins never used water. Therefore, Jenkins were not obligated to pay either the water connection fee or the water availability charges under the Application for Water Service because neither charges were approved by the PSC. Nebo had no right to withhold Jenkins' deed because of their failure to pay these charges.

The appellees' entire argument supporting the propriety of water availability charges is predicated on their interpretation of the Application for Water Service. They contend incorporating the Application for Water Service into the Acquisition Agreement bound Nebo to install the water line with water availability payments going to Nebo until Jenkins actually used water and then payments for water use would go to Utility. The trial court followed this reasoning. Our interpretation of the contracts negates this viewpoint. We are at a loss to see how Jenkins could have gleaned this construction from the contract.

For these reasons, the trial court erred in granting summary judgment in favor of Nebo on its claim for breach of contract and by entering judgment against Jenkins on their counterclaim for breach of contract.

 The trial court also erred by granting summary judgment in favor of

*sion,* (1978) Ind.App., 378 N.E.2d 896, appeal after remand 396 N.E.2d 927. The PSC also found no evidence the charges were collected on Utility's behalf. Our analysis is not analogous to the PSC's approach. We are concerned with contract rights and obligations, the PSC was concerned with Utilities revenue sources and earnings. Cause No. 33425 is tangential to the case at bar.

Nebo and Utility on Jenkins' counterclaim for fraud and punitive damages. Fraud consists of misrepresentation of a material fact, scienter, deception, reliance, and injury. *Economic Leasing Co., Ltd. v. Wood,* (1981) Ind.App., 427 N.E.2d 483. Mask, the salesman who sold Jenkins the lots, told Jenkins there would be no further charges until they built on the lot. Hurt, president of Utility and Nebo, testified he was actively involved in the hearing which set Utility's rates. These facts coupled with the contract's language that water charges would be subject to PSC approval reflect genuine issues of material fact which should have precluded summary judgment. There is the question of whether Nebo and Utility actually misrepresented that the various charges collected had been approved by the PSC. There is also the question of scienter. Given Mask's statement and Hurt's awareness of the proper water rates, it is possible to infer Nebo billed for charges which it was aware the PSC had not approved. We also note that both the victim's state of mind in relation to reliance and the scienter issue cannot generally be resolved on summary judgment, but instead are for the trier of facts. *Physician Mutual Insurance Company v. Savage,* (1973) Ind.App. 296 N.E.2d 165.

The appellees have placed a great deal of emphasis on the contract clause stating no oral representations were made. When the question of fraud is present, such language does not bind the alleged victim. 17 Am.Jur.2d *Contracts* § 191 (1964). We also think Jenkins were justified in relying on Mask's statements and the contracts' language pertaining to PSC approval of charges, contrary to appellee's argument. A party can justifiably rely on statements which are a matter of public record. *Shuee v. Gedert,* (1979) Ind.App., 395 N.E.2d 804.

The judgment of the court below is reversed. This case is remanded to the court below with instructions that judgment be entered in favor of Jenkins on their counterclaim for breach of the realty contract and that Nebo shall be ordered to convey good title to lot 972C to Jenkins. The re-

maining issues, contract damages, fraud and punitive damages, are remanded for trial.

RATLIFF, P. J., and NEAL, J., concur.