CONTINENTAL WASTE SYSTEM, INC., Thomas J. Hanchar, Anthony A. Hanchar and Brenda Hanchar, Plaintiffs,

v.

ZOSO PARTNERS, IJP Partners and Ivo Zoso, Defendants.

Ivo ZOSO, Counterplaintiff,

v.

CONTINENTAL WASTE SYSTEM, INC., Thomas J. Hanchar, Anthony A. Hanchar and Brenda Hanchar, Counterdefendants.

No. 88 C 2041.

United States District Court, N.D. Illinois, E.D.

Sept. 22, 1989.

John C. Theisen, Galucci Hopkins & Theisen, Fort Wayne, Ind., Howard L. Adelman, Adelman & Gettlemen, Chicago, Ill., for plaintiffs.

David Krupp, Neal Gerber Eisenberg & Lurie, Jack Joseph, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs Continental Waste Systems, Inc., Thomas J. Hanchar, Anthony A. Hanchar and Brenda Hanchar filed this diversity action against Zoso Partners, IJP Partners and Ivo Zoso. Subsequently, defendant Ivo Zoso filed two counterclaims. Presently before the Court are the defendant's motion for summary judgment on Counts I through VIII of the complaint and the plaintiffs' motion for summary judgment on defendant Ivo Zoso's counterclaims. For the reasons set forth herein, defendants' motions are denied and plaintiffs' granted.

## I.

### Background

This is an action for breach of contract, failure to pay promissory notes, misappropriation and improper transfer of funds and damage to personal property, for which plaintiffs seek to recover against defendants Zoso Partnership and Ivo Zoso. Plaintiffs claim that the defendants should each be treated as a general partner and be held liable for the debts of I. Jones partnership. Plaintiffs claim this liability exists because of several violations of the Uniform Limited Partnership Act ("ULPA"), and because the defendants engaged in active participations and control of the partnership business. Defendant Ivo Zoso counterclaims, alleging that, if he is personally liable to the plaintiffs, he is entitled to recovery for misrepresentations made with respect to the purchase contract described below.

Defendant Ivo Zoso ("Ivo") is an individual who has invested in hazardous waste treatment facilities. Prior to investing in Continental Waste (the facility involved in the current dispute), Ivo was the sole investor and limited partner in Chem Partners. Ivo became aware of this investment opportunity after Charles McKiel, a general partner in Chem Partners, had pitched the investment to Ivo's accountant Frederick Cook. Ivo's investment enabled the partnership to acquire a waste treatment plant in Des Plaines, Illinois. The plaintiffs allege that Ivo became actively involved in the management and control of Chem Partners.

Sometime after Ivo had invested in Chem Partners, McKiel became interested in purchasing an additional waste treatment facility in Fort Wayne, Indiana. This facility was the Continental Waste facility owned by the plaintiffs. McKiel proposed to Ivo and Cook that they form I. Jones Partners ("I. Jones") in order to acquire and manage this second facility. Eventually, Cook and Ivo formed Zoso Partners for the purpose

of holding a partnership interest in I. Jones. Cook held a 10% interest and Ivo held a 90% interest in the partnership. Pursuant to the terms of the I. Jones partnership agreement, Zoso Partners contributed $900,000 to I. Jones. McKiel was to form a partnership, IJP Partners, to invest an additional $100,000 in I. Jones. IJP Partners never contributed this amount. The plaintiffs charge that Ivo actively participated in the management and control of I. Jones, despite the fact that the Zoso Partners were nominally limited partners in I. Jones.

On August 1, 1985, I. Jones partnership purchased substantially all of the assets of Continental Waste. As part of the purchase agreement, I. Jones agreed to assume and pay certain debts and liabilities of Continental, Thomas Hanchar and Anthony Hanchar. I. Jones also agreed to provide other fees and benefits to the Hanchars. I. Jones executed promissory notes in favor of the Hanchars and the Hanchars' law firm. However, I. Jones failed to pay all of these debts and liabilities assumed under this purchase agreement.

Both Chem Partners and I. Jones partners began to experience severe financial difficulties. Various environmental hazards were discovered on the Indiana site; these hazards represented enormous cleanup costs. During this time, Ivo invested additional capital in I. Jones. McKiel was eventually removed as general partner of I. Jones and replaced by Cook, who attempted to continue operations at the Indiana facility. Plaintiffs allege that Ivo, through Cook, controlled the business of I. Jones both before and after this change in management.

During its operation of the Continental Facility, I. Jones made various payments to Chem Partners. I. Jones also paid the interest on a note taken by Ivo. The plaintiffs charge that these payments were improper and violate the ULPA.

In addition, plaintiffs allege that the defendants failed to comply with the statutory requirements of the ULPA. The I. Jones partnership certificate was not filed until September 12, 1985; this was six weeks after the partnership contracted to purchase Continental Waste. Plaintiffs also allege other filing defects. These defects include a failure to amend the certificate as required by the ULPA, and the failure to file the certificate in the proper county.

In February 1987, in an earlier law suit, the plaintiffs sued I. Jones, Cook, Ivo and Zoso Partners in the United States District Court for the Northern District of Indiana for breach of the Continental Waste purchase agreement. Ivo and Zoso Partners were dismissed by stipulation. The plaintiffs were awarded a default judgment against Cook and I. Jones. Two counterclaims alleging fraud and misrepresentation were dismissed with prejudice.

## II.

### Standard of Review

"A motion for summary judgment should be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Checkers, Simon & Rosner v. Lurie Corp.*, 864 F.2d 1338 (7th Cir.1988) (citation omitted). The moving party bears the burden of establishing the absence of any disputed facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If, however, the non-moving party bears the burden of proving an issue at trial, it also bears the burden of presenting sufficient facts on summary judgment from which a trier of fact could find in its favor, and the moving party need only "[point] out to the District Court ... that there is an absence of evidence to support the nonmoving party's case." *Id.*, 106 S.Ct. at 2554; *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir.1988). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Richardson v. Penfold*, 839 F.2d 392, 394 (7th Cir.1988).

## III.

### Defendant's Motion for Summary Judgment Counts I through V

In Counts I through V, plaintiffs seek to hold Ivo Zoso liable as a general partner for debts of I. Jones partnership owed to the Hanchars. Ivo was nominally a limited partner of I. Jones. However, the Hanchars contend that there are two grounds on which to assess personal liability against Ivo. First, plaintiffs argue that filing defects precluded the lawful creation of a limited partnership. Second, plaintiffs allege that Ivo participated in the control of I. Jones, thus rendering him personally liable as a general partner. Ivo moves for summary judgment, claiming that these allegations present no genuine issues of material fact.

The Hanchars maintain that several violations of the recording and registration requirements of the Uniform Limited Partnership Act ("ULPA"), Ill.Rev.Stat. ch. 106½, § 44, et seq. (1987), preclude Ivo from claiming limited partner status in I. Jones. First, the I. Jones certificate of limited partnership was not filed until September 12, 1985; this was six weeks after the closing of the purchase agreement. Second, the Hanchars' maintain that the certificate was filed in the wrong county. Section 2 of the ULPA provides that the certificate should be filed "in the office of the recorder of the county where the principal office of such limited partnership is located." The Hanchars claim that the certificate should have been filed in Allen County, Indiana, rather than in Cook County, Illinois. Third, I. Jones failed to file an amendment to the certificate when Cook became the new general partner. Finally, I. Jones failed to amend the certificate when Ivo became aware that the $100,000 capital contribution for IJP Partners would not be made.

■ Under Illinois law, these filing defects precluded the formation of a limited partnership. "Limited partnerships are creatures of statute.... Unlike a general partnership, a limited partnership cannot be created by informal agreement; its existence depends on compliance with the Uniform Limited Partnership Act. A certificate of incorporation must be signed by all the partners and filed in the county of the partnership's principal place of business." *Inland Real Estate Corporation v. Christoph*, 107 Ill.App.3d 183, 63 Ill.Dec. 9, 13, 437 N.E.2d 658, 662 (1st Dist.1982) (citations omitted). *See also Allen v. Amber Manor Apartments Partnership*, 95 Ill.App.3d 541, 51 Ill.Dec. 26, 32, 420 N.E.2d 440, 446 (1st Dist 1981) ("The certificate is a statutory prerequisite to the creation of a limited partnership and until it is filed, the partnership is not formed as a limited partnership.").

A corollary to the principle that filing defects preclude the formation of a limited partnership is that such filing defects affect the liability of the ostensible limited partners. Until a proper certificate of limited partnership is filed, "the partnership is not formed as a limited partnership and all partners will be treated as general partners." *Deporter–Butterworth Tours Inc. v. Tyrrell*, 151 Ill.App.3d 949, 104 Ill.Dec. 821, 827, 503 N.E.2d 378, 384 (3d Dist. 1982). "Any contracts entered into prior to ... the date on which the limited partnership certificate was filed and made of record, would be contracts entered into by a general partnership and all partners involved would be liable as general partners." *Id.* 104 Ill.Dec. at 827, 503 N.E.2d at 384.

■ Applied to the present case, these principles would suggest that Ivo may be subject to personal liability beyond his capital contribution to I. Jones. I. Jones did not even attempt to comply with the filing requirements of the ULPA until September 12, 1985. Even assuming, for present purposes, that this filing constituted "substantial compliance in good faith" for purposes of ULPA § 2(2), I. Jones entered into a contract with the Hanchars six weeks prior to this filing. Ivo would be liable as a general partner for this pre-filing contract under Illinois law.

■ Ivo seeks to avoid the effect of these filing defects and obtain summary

judgment in his favor through § 11 of the ULPA. This section provides:

A person who has contributed to the capital of a business conducted by a person or partnership erroneously believing that he has become a limited partner in a limited partnership, is not, by reason of his exercise of the rights of a limited partner, a general partner with the person or in the partnership carrying on the business, or bound by the obligations of such person or partnership; provided that on ascertaining the mistake he promptly renounces his interest in the profits of the business, or other compensation by way of income.

Ill.Rev.Stat. ch. 106½, § 54. Ivo states that the Hanchars first raised the defective filing issues on January 21, 1987, during related litigation in another court. On January 29, 1987, Ivo sent Cook a letter renouncing any interest in the profits of I. Jones. (Joseph Aff't). Ivo contends that this renunciation is sufficient to bring him within ULPA § 11 as a matter of law.

However, Ivo's attempted application of § 11 raises substantial issues of material fact. First, § 11 is available only to those individuals who limit their participation in the partnership to the exercise of rights held by limited partners. *See Giles v. Vette*, 263 U.S. 553, 44 S.Ct. 157, 161, 68 L.Ed. 441; ULPA § 7. There is a substantial question of fact as to whether Ivo participated in the control of I. Jones, thereby exercising the rights of a general partner.[1] Second, there is a question of fact as to whether Ivo could have believed in good faith that he was a limited partner until January of 1987. The Hanchars suggest at least two dates, far in advance of the January 29, 1987 renunciation, when Ivo should have had notice of the filing defects. Ivo learned in 1985 that IJP Partners would not contribute the funds stated in the I. Jones partnership certificate. On August 27, 1986, Ivo was sued individually for partnership debts. At a minimum, there is an issue of fact as to whether Ivo was or should have been aware of the filing defects on one or both of these dates.

Furthermore, the possibility that Ivo had notice of filing defects far in advance of the renunciation creates a material issue of fact as to whether this renunciation was prompt. *See Vidricksen v. Grover*, 363 F.2d 372 (9th Cir.1966) (holding that a six-month delay in renunciation was not "prompt" for purposes of ULPA § 11). Together, these issues of fact render summary judgment inappropriate.

Ivo also contends that he is entitled to summary judgment on the issue of whether he exercised control over I. Jones, rendering him liable under § 7 of the ULPA. This section provides that, "A limited partner shall not become liable as a general partner unless, in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business." Ill.Rev.Stat. ch. 106½, § 50. Ivo makes two arguments in favor of his motion for summary judgment. First, Ivo argues that he is entitled to summary judgment because in order to make a limited partner liable under § 7, a creditor must show that in extending credit to the partnership, he relied upon the fact that the limited partner acted as a general partner. Ivo claims that there is no issue of fact as to whether the Hanchars relied on Ivo's status as a general partner. Second, Ivo contends that no reasonable juror could conclude that he participated in the control of I. Jones.

Courts are split as to whether creditor reliance is a requirement under § 7. Illinois, however, has not considered this question. A federal court recently discussed the underlying rationales that have driven courts to reach divergent views on the issue.

Although undoubtedly in conflict with one another, these dichotomous lines of authority can be explained by recognizing that the different courts had different focuses. Those which required reliance as an element of control were concentrating upon the external relationship between the plaintiff and the limited partner, and were concerned with the equities arising from that relationship.

1. *See* discussion *infra.*

The *Delaney* [*v. Fidelity Lease Ltd.*, 526 S.W.2d 543 (Tex.1975)] Court, in contrast, appears to have been concerned with the broader public policy of requiring those who choose to accept the benefits of the limited partnership form to preserve the integrity of the partnership's internal relationships.

*Mt. Vernon Sav. and Loan v. Partridge Assoc.*, 679 F.Supp. 522, 527 (D.Md.1987). Because Illinois courts have consistently affirmed the importance of complying with the strict formation requirements of the ULPA,[2] it seems likely that Illinois courts would side with those courts that have chosen not to import a reliance requirement into § 7.

However, we need not decide the issue at this time, as there are facts in the record that indicate that the Hanchars may have relied on the assets of Ivo when entering into the purchase agreement. Thomas Hanchar has stated that during the negotiations for the purchase of Continental, he was told that, "the I. Jones Partnership consisted of other general partners [in addition to IJP] with assets and capital sufficient to make the payments called for in the agreement." (Hanchar Aff't, Pltf. Ex. 2). This representation creates an issue of fact as to whether the Hanchars relied on the assets of Ivo.

The question of whether Ivo participated in the control of I. Jones also involves issues of fact wholly inappropriate for summary judgment. This is evidenced all too clearly by the memoranda submitted by both parties, in which each side contests the version of facts presented by the other. It is unnecessary to rehash this dispute in its entirety. Rather, it is sufficient to cite a few of the facts that might lead a jury to conclude that Ivo controlled I. Jones. First, the record is replete with alleged assertions of control over both Chemisphere and I. Jones by Cook.[3] Cook admit-

ted that he had Ivo's authority to act as his agent with respect to Chemisphere (Cook Dep. 183, 192), and it would be reasonable for a jury to conclude that Cook also acted as Ivo's agent with respect to I. Jones. Cook and Ivo had weekly meetings (Cook Dep. 188) at which Cook would report on the status of I. Jones and received directions regarding I. Jones' business. (Cook Dep. 266). Ivo participated in the decision to remove McKiel as general partner and install Cook in his place. (Cook Dep. 275). Finally, Cook has stated that he felt Ivo controlled the business of I. Jones through him. (Cook Dep. 68).

In conclusion, determinations regarding the existence, extent and duration of Ivo's alleged control over the business of I. Jones are issues for the trier of fact, not for a court deciding a motion for summary judgment. For this reason, and the reasons stated above, the defendant's motion for summary judgment on Counts I through V is denied.

### Count VI

Count VI alleges various improper payments and returns of capital to limited partners in violation of ULPA §§ 13 and 16. Ill.Rev.Stat. ch. 106½, §§ 56, 59. These payments include: a $38,475 interest payment due on one of Ivo's promissory notes; a $141,000 payment to Chemisphere; a $4,000 payment to Chemisphere employees; a $78,000 payment to Chemisphere's law firm; payment of approximately $10,000 in Chem Partner payroll taxes.

Ivo initially takes the position that none of these payments could violate the ULPA because the statute specifies that a partner must "receive" the payments. Ivo argues that payments that merely "benefit" a partner would not be actionable. Thus, according to Ivo, if I. Jones paid a personal obligation owed by Ivo, this could not vio-

---

**2.** *See, e.g., Inland Real Estate v. Christoph*, 63 Ill.Dec. 9, 437 N.E.2d 658; *Deporter–Butterworth Tours, Inc. v. Tyrell*, 104 Ill.Dec. 821, 503 N.E.2d 378; *Allen v. Amber Manor Apts. Partnership*, 51 Ill.Dec. 26, 420 N.E.2d 440.

**3.** Many of these assertions are included in the deposition testimony of McKiel. Defendant

launches an attack on the admissibility of this evidence. However, most if not all of this evidence would likely be admissible, either under Federal Rule of Evidence 801(d)(2) or on the ground that it would not be admitted to prove the truth of the matter asserted.

late the statute because the funds were not directly received by Ivo.

■ This literal interpretation of the statute is not acceptable. This reading would allow partnerships an extraordinarily simple way to defraud creditors and avoid the mandate of the statute. Clearly, payments made for the private benefit of a partner, even if not received directly, should be actionable under the provision.

■ This stated, the issues presented by Count VI involve disputes and interpretations of contested facts. Each side urges the Court to accept its theory of how and why these payments did or did not benefit Ivo. At a minimum, the defendant has not succeeded in establishing the absence of any material issues of fact. For example, a reasonable jury could conclude that the $38,475 interest payment on Ivo's personal note was for Ivo's benefit.[4] A reasonable juror could also conclude that payment of Chemisphere's debts were made to protect and benefit Ivo, the sole investor in this venture. Accordingly, we deny defendant's motion for summary judgment on Count VI.

## Count VII

In Count VII, the Hanchars seek to enforce a capital account makeup provision included in the I. Jones partnership agreement. The Hanchars contend that the purpose, intent and effect of this provision is to oblige partners to make up deficits in their capital accounts should the assets of the partnership be insufficient to meet its debts. Ivo requests summary judgment,[5] arguing that the Hanchars cannot enforce this provision because the third party creditors were not intended beneficiaries of the agreement.

"One is a third party beneficiary of a contractual provision if the parties to a contract ... intended that the agreement confer a benefit on him." *Christensen v. Numeric Micro*, 151 Ill.App.3d 823, 104 Ill.Dec. 843, 848, 503 N.E.2d 558, 563 (2d Dist.1987), citing *Bates & Rogers Construction Corp. v. Greeley & Hansen*, 109 Ill.2d 225, 93 Ill.Dec. 369, 486 N.E.2d 902 (1985). It is not necessary that the third party be specifically named in the contract, as long as the contracting parties intended to confer a benefit on the third party. *See, e.g., Candlewick Lake Utilities Co. v. Quinones*, 82 Ill.App.3d 98, 37 Ill.Dec. 479, 483, 402 N.E.2d 369, 373 (2d Dist.1980). The intent of the contracting parties with regard to third party beneficiaries is a question of fact, to be determined on a case by case basis. *See, Id.; Midwest Concrete Products v. LaSalle Nat. Bank*, 94 Ill. App.3d 394, 49 Ill.Dec. 968, 970, 418 N.E.2d 988, 990 (1st Dist.1981).

■ Ivo has not established as a matter of law that the Hanchars, as creditors, were not intended beneficiaries. The literal language of the provision and the expressed intent of its author (Hayes Aff't) could lead a reasonable juror to conclude that the provision was intended to benefit creditors. This would be a reasonable conclusion even though the benefit to creditors may not have been the sole aim of the provision. "A contract need not be entered into for the sole benefit of the third person in order to enable him to enforce it so long as it is clear that the contracting parties intended him to benefit directly." *Robson v. Robson*, 514 F.Supp. 99, 101 (N.D.Ill. 1981), *aff'd*, 681 F.2d 820 (7th Cir.1982).

Ivo argues that even if the Hanchars were intended beneficiaries, they are subject to the same defenses as a party to the contract. Ivo lists various defenses he

---

4. Ivo contends that his additional capital contributions "wash out" the payment of his interest. However, a contribution to the capital of a limited partnership is an investment. A contribution entitles the "investor" to share in profits and losses. *See Kramer v. McDonald's System, Inc.*, 77 Ill.2d 323, 33 Ill.Dec. 115, 119, 396 N.E.2d 504, 508 (1979). Ivo's capital account was increased by his later contributions, but not decreased by the amount of the interest pay-

ment. Therefore, the transaction was not a "wash" because Ivo became entitled to a greater share of the partnership profits.

5. The motion was originally filed as a motion to dismiss. Because the motion relies on materials outside the pleadings, we will treat the motion as one for summary judgment, pursuant to Fed.R.Civ.P. 12(b).

would assert against the Hanchars, including mistake and fraud in the inducement. However, the availability of these defenses rests on the same disputed facts as Ivo's other arguments; the Hanchars point to facts that, if proven, would defeat these defenses.

Next, Ivo argues that a release given to Zoso Partners by Cook and I. Jones discharges him from any duty that might have been owing to the plaintiffs. Ivo argues that this release frees him from responsibility under the capital account makeup provision because it was given before the Hanchars had sued or otherwise acted in reliance. Essentially, Ivo's argument is that the release was given before the Hanchars' rights as third party beneficiaries had vested.

■ This argument is incorrect as a matter of law. "Illinois courts have consistently held that a third-party creditor beneficiary obtains an immediate vested right as against a promisor, and this right, once given, deprives the promisor of any interest or right in the subject matter of the promise, including the right to alter, rescind or revoke it." *Robson*, 514 F.Supp. at 103 (citation omitted). Thus, the Hanchars' right vested immediately upon the creation of a debt in their favor, regardless of their, Ivo's or I. Jones' subsequent action.

Moreover, the purported release may violate § 17 of the ULPA. Ill.Rev.Stat. ch. 106½, § 60. The relevant portion of this section states:

> A limited partner is liable to the partnership for the difference between his contribution as actually made and that stated in the certificate as having been made ... and for any contribution which he agreed in the certificate to make in the future at the time and on the conditions stated in the certificate.... The liabilities of a limited partner as set forth in this section can be waived or compromised only by the consent of all members; but a waiver or compromise shall not affect the right of a creditor of a partnership who extended credit or whose claim arose after the filing and

before a cancellation or amendment of the certificate, to enforce such liabilities. Thus, if the Hanchars' claims are found to have arisen after the filing of the I. Jones certificate, § 17 might be an additional basis for a finding that Cook's release of Ivo did not extinguish the Hanchars' rights as a third party beneficiary.

Ivo's two final arguments for summary judgment on Count VII also involve issues of contested fact. First, Ivo argues that relief is unavailable to the Hanchars because they are guilty of unclean hands. Ivo claims that the Hanchars misrepresented the condition of Continental to the purchasing group. The Hanchars deny they acted in bad faith. Second, Ivo claims that there is no negative balance in the capital account. However, the Hanchars claim that Ivo has failed to deduct certain "net losses allocated." The Hanchars also point out that Cook, Ivo's own accountant, computed a large deficit in Ivo's capital account in 1986, 1987 and 1988. (Cook Dep. 350–352). It is obvious that both of Ivo's arguments implicate issues of material fact. Once again, we decline to resolve these issues in the context of a motion for summary judgment.

For all of these reasons, we deny defendant Ivo's motion for summary judgment on Count VII.

### Count VIII

In Count VIII, the Hanchars seek to enforce a default judgment in an Indiana federal case against Cook and I. Jones. Ivo and Zoso Partners were not parties to this action. Plaintiff argues that they are entitled to enforce this judgment against Ivo because he is obligated to restore his capital account under the capital account makeup provisions of the partnership agreement. Ivo moves for summary judgment on the grounds that there is no deficit balance in his capital account, and that the default judgment against Cook and I. Jones is not enforceable against him.

*Restatement, Second, Judgments* § 60(1)(b)(ii) provides that a judgment against one partner can only be enforced against other partners who did not participate in the litigation to the extent of part-

nership property. The Hanchars argue that Ivo's debt under the capital account makeup provision is partnership property, while Ivo disputes the Hanchars' assertion that he has a deficit balance in his capital account. Thus, the resolution of Count VIII rests on the same contested issues of fact presented in Count VII. Accordingly, we deny the motion for summary judgment on Count VIII.

### Plaintiff's Motion for Summary Judgment On Defendant's Counterclaims

Defendant Ivo counterclaims for breach of contract and fraud. He alleges that the Hanchars breached a contractual indemnification provision included in the purchase agreement and fraudulently misrepresented the condition of the Continental facility. Plaintiffs move for summary judgment on the ground that these claims are barred by *res judicata.* Plaintiffs point to an order in *Continental Waste Systems, Inc., Thomas J. Hanchar and Anthony A. Hanchar v. I. Jones Partnership, et al.,* No. F87–28, 1988 WL 169830 (N.D.Ind. 1987) (Pltf. Ex. C). In this order, the Court dismissed with prejudice two counterclaims virtually identical to the counterclaims raised in the present action.[6]

"The essential elements of the doctrine of *res judicata* are generally stated to be: (1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and later suit; and (3) an identity of the parties or their privies in the two suits." *Brown v. J.I. Case Co.,* 813 F.2d 848, 854 (7th Cir.1987) (citation omitted). Ivo claims that two of these requirements are not met in the present case. First, he argues that the Indiana order of nonsuit does not constitute a judgment on the merits. Second, Ivo

contends that, because he was not a party to the Indiana action at the time the order was entered, there is no "identity of parties."[7] We find that these arguments are without merit, and that Ivo's counterclaims are barred by *res judicata.*

■ The Indiana order constitutes a judgment on the merits. Federal Rule of Civil Procedure 41(b) provides:

> Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule … operates as an adjudication on the merits.

The Indiana district court did not specify that its order was not to operate as an adjudication on the merits. When a district court dismisses a claim without stating whether the dismissal is on the merits, the dismissal becomes a final judgment on the merits under Rule 41(b). *Kimmel v. Texas Commerce Bank,* 817 F.2d 39, 40 (7th Cir. 1987). Furthermore, although the Indiana court may not have been explicit, its order of dismissal *with prejudice* clearly contemplates a dismissal on the merits.

Ivo cites several cases to support an argument that Rule 41(b) should not be literally interpreted, and that this Court should undertake a "rigorous and thorough examination of the grounds for dismissal." However, even a cursory examination of the Indiana order indicates that the judgment of nonsuit was entered against I. Jones for its failure to prosecute its counterclaims. Such a dismissal indisputably operates as a judgment on the merits under Rule 41(b). *Kimmel v. Texas Commerce Bank,* 817 F.2d 39, 40; *Kotakis v. Elgin, Joliet & Eastern Railway Co.,* 520 F.2d 570, 576 (7th Cir.1975).[8]

---

**6.** This order provides: "The Defendants I. Jones Partnership and Frederick J. Cook are nonsuited as to their Counterclaims against the plaintiffs, and the Counterclaims are ordered dismissed with prejudice." (Pltf. Ex. C).

**7.** Ivo does not dispute that there is sufficient identity between the counterclaims in this action and the counterclaims dismissed in the Indiana action.

**8.** Ivo cites *Harl v. City of LaSalle,* 679 F.2d 123 (7th Cir.1982), for the proposition that a dismissal for want of prosecution does not operate as an adjudication on the merits. This case, however, involves an interpretation of the Illinois law of *res judicata.* "When the prior litigation was brought in federal court, the federal rule of *res judicata* applies." *Shaver v. F.W. Woolworth Co.,* 840 F.2d 1361 (7th Cir.1988). *Harl,* therefore is inapposite.

■ Ivo's second argument—that there is insufficient identity of parties—is also without merit. He argues that this requirement is not satisfied for two reasons. First, Ivo states that *res judicata* should not apply because Ivo was not a party or in privity with a party to the Indiana action. Second, Ivo argues that, even if he was represented in the prior action, this representation was so deficient as to preclude the Court from applying *res judicata*.

As an initial matter, it must be observed that Ivo does not bring these counterclaims on behalf of himself; he seeks to litigate the counterclaims on behalf of I. Jones, should he be held liable as a general partner.[9] Furthermore, the Hanchars assert *res judicata* in order to bind the I. Jones partnership, not Ivo, to the judgment rendered in the Indiana action. Therefore, the appropriate inquiry is whether I. Jones was a party or in privity with a party in the Indiana action.

The Indiana federal court issued its order dismissing the counterclaims of I. Jones partnership. I. Jones now attempts to prosecute the same claims, with a different general partner at the helm. Ivo's argument that there is no identity of parties rests on the assumption that, as a general partner of I. Jones, he should be afforded a full and fair opportunity to relitigate I. Jones' claims. However, of concern here is I. Jones' opportunity to litigate, not the opportunities of its partners to litigate on its behalf.

Ivo seems to suggest that every general partner should have the opportunity to litigate partnership claims, as the partners' interests are at stake when the partnership is involved in litigation. However, such a rule would undermine the core policy considerations underlying *res judicata*. The doctrine serves to conserve judicial resources and prevent the harassment of de-fendants. *Shaver v. F.W. Woolworth*, 840 F.2d 1361 (7th Cir.1988). Allowing repeated litigation by general partners who are dissatisfied with earlier dispositions would unduly burden both the courts and defendants.[10]

Ivo also argues that, even if there was sufficient identity of parties, the counterclaims should not be precluded because the representation of Cook on behalf of I. Jones was inadequate. Ivo cites *Restatement, Second, Judgments*, § 42(1)(e) in support of this argument. This section provides that, "A person is not bound by a judgment for or against a party who purports to represent him if ... the representative failed to prosecute or defend the action with diligence and reasonable prudence, and the opposing party was on notice of facts making that failure apparent."

Ivo argues that Cook's failure to prosecute the claim brings the Indiana judgment within the ambit of § 42. "Whether the representation has been inadequate is a question of fact." *Id.*, comment f. Ivo points to no facts in the record that support his argument that the decision not to pursue the counterclaims was the result of a lack of due diligence of reasonable prudence. Furthermore, § 42 requires that the opposing party has notice of the deficient representation; Ivo fails to cite facts indicating that the Hanchars had notice that Cook was not acting with reasonable prudence under the circumstances.

Ivo also claims that Cook was an inadequate representative because he and Cook were adversaries. This contention is not persuasive for three reasons. First, the record indicates that Cook had a large financial stake in I. Jones partnership. Thus, even if Cook felt ill will toward his partner, he had independent incentives to responsibly litigate partnership claims.

---

9. This conclusion is both explicit and implicit in Ivo's pleadings. Ivo states that he brings the counterclaims on behalf of I. Jones, should he be found to have controlled I. Jones. Furthermore, he maintains that he was a "stranger" to the Continental transaction. Therefore, it would be imposible for Ivo to state a claim that the Hanchars had defrauded or breached a contract with Ivo individually.

10. *See Restatement, Second, Judgments*, § 60(2)(a); "A judgment in an action by a partner upon a claim in favor of the partnership or concerning partnership property ... if against the plaintiff, bars another action on the same claim."

Second, Ivo points to no facts that support his claim that the relationship between Cook and Ivo had any impact on the Indiana litigation. Finally, he does not make a factual showing that the Hanchars had notice that the relationship between Cook and Ivo was such that Cook would not responsibly pursue litigation.

Ivo's most serious charge is that the Indiana judgment was the product of collusion between Cook and the Hanchars. Specifically, Ivo cites a statement Cook made to one of the Hanchars' attorneys, in which Cook suggested that he look at the capital account make up provision in the I. Jones partnership agreement. (Cook Dep. 9/21/88 p. 159). However, the facts do not substantiate this allegation. First, it is apparent from the deposition transcript that Cook made this statement in order to further settlement negotiations, rather than to injure Ivo's interests. Second, the statement does not relate to the substance of the counterclaims, but a separate legal dispute between I. Jones and the Hanchars. Finally, this statement was made months after the Indiana federal action had concluded. Thus, not only does this statement fail to establish collusion, but it is not temporally or logically connected with Cook's decision not to pursue the counterclaims. "If the evidence is merely colorable, or is not significantly probative," summary judgment may appropriately be granted. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Accordingly, we find that the counterclaims pled by Ivo in the present action are barred by *res judicata* and grant the Hanchars' motion for summary judgment on these claims.

### Conclusion

For the reasons stated above, defendant's motions for summary judgment on the complaint are denied, and plaintiffs' motion for summary judgment on defendant's counterclaims is granted. It is so ordered.