LINDA CHRISTENSEN *et al.*, d/b/a Chrest Enterprises, Plaintiffs-Appellants, v. NUMERIC MICRO, INC., *et al.*, Defendants-Appellees.

Second District   No. 85—0934

Opinion filed January 13, 1987.

Patrick M. Kinnally, of Murphy, Hupp, Foote & Mielke, of Aurora, for appellants.

Pamela Kirkland Jensen, of Brady, McQueen, Martin, Collins & Jensen, of Elgin, for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiffs, Linda and Charles Christensen, doing business as Chrest Enterprises, appeal from the dismissal for failure to state a cause of action pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615) of counts III and IV of their first amended complaint against defendant, Master Lease Corporation.

Plaintiffs raise three issues on appeal: (1) whether count III of their first amended complaint states a cause of action against Master Lease, an equipment lessor, under section 2B of the Consumer Fraud

and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 262B) where the equipment lease did not give plaintiffs notice of the right to cancel the transaction; (2) whether count IV of their first amended complaint states a cause of action under a third-party beneficiary theory for breach of contract between Master Lease and the manufacturer of the equipment; and (3) whether the trial court erred in dismissing the complaint with prejudice without permitting plaintiffs to amend the complaint.

Plaintiffs filed their original three-count complaint against defendants Numeric Micro, Inc., a Texas corporation (Numeric Texas), Numeric Micro of Illinois (Numeric Illinois), and Master Lease. The complaint alleged that plaintiffs, who own and operate Chrest Enterprises, a sole proprietorship located in Aurora, Illinois, purchased a numerical control processing system, or computer system, from Numeric Illinois. To finance the transaction, plaintiffs executed an equipment lease with Master Lease on the advice of Numeric Illinois. Plaintiffs alleged that Master Lease purchased the system from Numeric Illinois and Numeric Texas, and that plaintiffs entered into an equipment lease with Master Lease, a copy of which was attached to the complaint.

Plaintiffs alleged that they were not given notice of the opportunity to cancel this transaction in violation of the Consumer Fraud and Deceptive Business Practices Act (Act) (Ill. Rev. Stat. 1985, ch. 121½, par. 262B) and will therefore, as members of the public, become subject to great expense and burden if they are required to continue to pay Master Lease for equipment that does not work. Plaintiffs requested a declaratory judgment pursuant to section 2—701 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—701) that the lease agreement is of no force and effect because it is in violation of the Act and that plaintiffs have no further obligation to make payments pursuant to the lease agreement with Master Lease. Plaintiffs also requested that Master Lease be enjoined from collecting any further payments under the lease and that they be awarded attorney fees.

The lease agreement provides, in pertinent part, that the lease commenced January 31, 1984, that it was not intended for home or personal use, and that 61 monthly payments were due from the plaintiffs to Master Lease, a first payment of $4,366.44 and 60 payments of $448.35. The rent payments were to commence on the date of delivery of the described computer system to plaintiffs from Numeric Texas. The lease further stated that Master Lease expressly disclaimed all warranties, expressed or implied, with respect to the

leased equipment, that Master Lease "has made no representation or warranty with respect to the suitability or durability of the equipment," and that "[t]his is a non-cancellable lease for the full term shown above."

A copy of a "guaranty" agreement between plaintiffs and Master Lease, signed the same day, was also attached to the complaint. It stated that plaintiffs "absolutely and unconditionally, [guaranty] [*sic*] to the Lessor and any assignee of the Lessor *** the prompt payment of all rent to be paid and the performance of all terms, conditions, covenants and agreements of the lease, irrespective of any invalidity or unenforceability thereof or the security thereof."

Plaintiffs alleged that, at the time the system was delivered, it would not operate, and, when started, it began smoking. They further alleged that the system does not work and has never worked, and that both Numeric Texas and Numeric Illinois have refused to repair or replace the system.

Counts I and II of the complaint alleged the breach of warranties by Numeric Texas and Numeric Illinois. Count III alleged a violation of section 2B of the Act (Ill. Rev. Stat. 1985, ch. 121½, par. 262B) by both Numeric companies and Master Lease. Numeric Illinois has never appeared in these proceedings, and Numeric Texas' attorneys have withdrawn from the case. Neither Numeric company is a party to this appeal.

Count III of the complaint was dismissed as against Master Lease pursuant to its motion to dismiss under section 2—615, and plaintiffs were granted leave to amend the complaint. They filed a first amended complaint which essentially restated the original count III and added the allegations that Master Lease had contacted plaintiffs and that plaintiffs had telephoned Master Lease on the advice of Numeric Illinois. Plaintiffs also alleged in count III that they performed all of their obligations under the lease until December 15, 1984.

The complaint also added count IV to the amended complaint which was based on the purchase order agreement between Master Lease and Numeric Texas. The agreement was dated February 2, 1984, two days after the equipment lease agreement. Plaintiffs alleged that Master Lease knew both plaintiffs' identity at the time of the execution of the purchase order, and plaintiffs' specific requirements as to the system they were purchasing, and that the purchase order clearly shows that plaintiffs were to receive the goods listed and sold by Numeric Texas to Master Lease. Plaintiffs also alleged that they repeatedly informed Master Lease that the system delivered to it by Numeric Texas was inoperable and unacceptable and that they

finally sent notice of rejection to both Numeric companies and a copy to Master Lease on December 26, 1984. Plaintiffs further alleged that Master Lease has been relieved of liability because of plaintiffs' rejection of the system and has breached its agreement with Numeric Texas by failing to honor plaintiffs' notice of rejection. This was based on the language of the following provisions from the purchase order:

"6. **Rejection by Lessee** If lessee shall reject or refuse to accept any merchandise pursuant to this purchase order, buyer shall be deemed relieved of any liability to vendor under such purchase order as to such merchandise, and all obligations of buyer hereunder as to such merchandise shall upon such rejection or refusal be deemed those of lessee, with the same force and effect as if lessee, instead buyer, had placed this purchase order as to such merchandise, and vendor in such event, shall look only to lessee with respect to any liability or obligation hereunder.

\* \* \*

11. **Warranties by Vendor** Vendor warrants that immediately prior to our purchase it had legal title to the merchandise; free from any liens and encumbrances, that the merchandise ordered hereunder shall be fit and sufficient for the purpose intended that it will conform to the specifications, drawings or samples, if any, furnished or adopted by the buyer and will be merchantable, of good quality and free from defects in material, design or workmanship. No part or parts made according to buyer's design will be sold to any other person, firm or corporation. The foregoing is in addition to the and not in lieu of any and all other warranties expressed or implied. All warranties shall run to, enure for the benefit of and be enforcable [*sic*] by both buyer and its lessee, jointly and separately."

Plaintiffs requested judgment against Master Lease for the amount of any payments made to Master Lease by plaintiffs after they suspended performance and for a declaration that plaintiffs' suspension of performance was proper.

Master Lease filed a motion to dismiss counts III and IV of the amended complaint pursuant to section 2—615 contending that count III did nothing more than reincorporate count III of the original complaint which had already been dismissed and that count IV, which sought recovery on third-party beneficiary theories, failed to state a cause of action against Master Lease as the purchase order created no contractual obligations of Master Lease upon which plaintiffs could rely. During a hearing on the motion to dismiss, plaintiffs' counsel

stated, "if the Court for some reason were to decide that we were not entitled to proceed under any of these theories, we would again ask for leave to amend our complaint." An order was entered granting Master Lease's motion to dismiss with prejudice counts III and IV of the first amended complaint as to Master Lease. The order stated that there was no just reason to delay enforcement or appeal, and this appeal followed pursuant to Supreme Court Rule 304(a). (103 Ill. 2d R. 304(a)).

Plaintiffs first maintain that count III of their first amended complaint states a cause of action against Master Lease and was improperly dismissed. They contend that they have sufficiently alleged a violation of section 2B of the Act because they have never received from Master Lease, or any other defendant, any notice that plaintiffs had the right to cancel the transaction, which is required by the Act.

Section 2B of the Act states, in pertinent part:

> "Where a sale of merchandise involving $25 or more is made or contracted to be made whether under a single contract or under multiple contracts, to a consumer as a result of or in connection with a person's contact with or call on the consumer, that consumer may avoid the contract or transaction by notifying the seller within 3 full business days following that day on which the contract was signed or the sale was made and by returning to the person, in its original condition, any merchandise delivered to the consumer under the contract or sale. At the time the transaction is made or the contract signed, the person shall furnish the consumer with a fully completed receipt or contract pertaining to the transaction, in substantially the same language as that principally used in the oral presentation to the consumer, containing a 'Notice of Cancellation' informing the consumer that he may cancel the transaction at any time within 3 days and showing the date of the transaction with the name and address of the person ***." (Ill. Rev. Stat. 1985, ch. 121½, par. 262B.)

The section then sets out, in large, capitalized print, the required language of the notice which must appear on the receipt or contract and a six-paragraph "notice of cancellation" which must be attached to the receipt or contract, which must be easily detachable and which can be sent by the consumer within three business days to cancel the contract. The section further provides:

> "The 3 day period provided for in this Section does not commence until the consumer is furnished a 'Notice of Cancellation', and the address at which such notice to the seller can

be given. ***

* * *

For the purposes of this Section, the word 'sale' includes a sale, lease or rental.

This Section does not apply to any transaction

(a) made pursuant to prior negotiations in the course of a visit by the consumer to a retail business establishment having a fixed permanent location where the goods are exhibited, or the services are offered, for sale or lease on a continuing basis;

* * *

(d) conducted and consummated entirely by mail or telephone without any other contact between the consumer and the person or its representative prior to delivery of the goods or performance of the services; ***.'' Ill. Rev. Stat. 1985, ch. 121½, par. 262B.

Although Master Lease has raised several arguments in response to plaintiffs' assertion of a cause of action based on a violation of the Act, we need not consider each of them as we agree with one of Master Lease's contentions that the lease executed by plaintiffs and Master Lease to finance the purchase of equipment from the Numeric companies is not a consumer transaction covered under the Act.

Examination of the amended complaint indicates that Numeric Illinois "sold and delivered" to plaintiffs the equipment at issue. Further, it is evident from the amended complaint that Master Lease, which is in the equipment leasing business, became involved only to finance the transaction. The Numeric companies are not agents or representatives of Master Lease, and Master Lease, a Michigan corporation, was not affiliated with the Numeric companies in any way. It appears that plaintiffs telephoned Master Lease for financing on the advice of Numeric Illinois. Master Lease never took possession of the equipment, and it was delivered to plaintiffs by Numeric Illinois. All warranties of the equipment run to plaintiffs from the Numeric companies, and Master Lease specifically disclaimed all warranties in its lease with plaintiffs.

■ The Act was not intended to extend to every transaction between contracting parties. (See *Grass v. Homann* (1984), 130 Ill. App. 3d 874, 880, 474 N.E.2d 711.) Section 2B of the Act provides for a notice of cancellation of a contract involving a sale to a consumer "as a result of or in connection with a person's contact with or call on the consumer." (Ill. Rev. Stat. 1985, ch. 121½, par. 262B.) It is manifest that the sale of the equipment arose from Numeric Illinois' contacts with plaintiff, and that Master Lease was only involved in the financ-

ing of the sale of equipment after an agreement was reached for purchase of the equipment between Numeric Illinois and plaintiffs. Although we recognize that Master Lease became the owner of the equipment and then entered into a lease of the equipment to plaintiffs, we do not believe that, under these circumstances, this financing agreement following the initial arrangement for the sale of the equipment between plaintiffs and the Numeric companies falls within the scope of the Act. We, therefore, affirm the trial court's dismissal of count III.

■ Plaintiffs next contend that count IV of their amended complaint states a cause of action against Master Lease for breach of the purchase order agreement between Master Lease and Numeric Texas, as the plaintiffs were direct beneficiaries under the contract. It is true that the purchase order postdated the equipment lease and expressly states that "all warranties shall run to, enure for the benefit of and be enforcable [sic] by both buyer and its Lessee." Plaintiffs are named on the purchase order and are clearly the "lessee" referred to. One is a third-party beneficiary of a contractual provision if the parties to a contract, or at least the promisee, intended that the agreement confer a benefit on him. (*Bates & Rogers Construction Corp. v. Greeley & Hansen* (1985), 109 Ill. 2d 225, 232, 486 N.E.2d 902.) A third-party beneficiary may sue for breach of a contract made for his benefit. (*Wilde v. First Federal Savings & Loan Association* (1985), 134 Ill. App. 3d 722, 731, 480 N.E.2d 1236.) The right of the third-party benefited by a contract to sue thereon rests upon the liability of the promisor, and this liability must appear from the language of the instrument when properly interpreted and construed. (*Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 54-55, 421 N.E.2d 182; *Metro East Sanitary District v. Village of Sauget* (1985), 131 Ill. App. 3d 653, 657, 475 N.E.2d 1327.) Third-party beneficiaries of a contract have no greater rights than the party they wish to claim under. *Kessler, Merci, & Lochner, Inc. v. Pioneer Bank & Trust Co.* (1981), 101 Ill. App. 3d 502, 508-09, 428 N.E.2d 608.

Here, the provisions of the purchase order agreement relied on clearly constitute a promise by Numeric Texas as promisor to Master Lease as promisee. The warranty provision of paragraph 11 was intended to confer a benefit on the plaintiffs. Under this provision, however, plaintiffs only have a cause of action against Numeric Texas, the promisor, for breach of the warranties. Based on third-party beneficiary law, the only way that plaintiffs can state a cause of action against Master Lease based on the purchase order agreement is if Numeric Texas has rights against Master Lease for the breach of pro-

visions made for plaintiffs' benefit. Master Lease made no promise in the warranty provision so neither Numeric Texas nor plaintiffs have any cause of action against Master Lease for breach of the contract.

■ Similarly, paragraph 6 of the purchase order contains a promise by Numeric Texas that Master Lease will be relieved of all liability if plaintiffs, as lessee, reject or refuse the merchandise. Assuming for the sake of argument that this provision was intended to benefit plaintiffs, although it clearly appears otherwise, again no promise was made by Master Lease. As Numeric Texas has no cause of action against Master Lease for breach of that provision, plaintiffs have no cause of action against Master Lease either. Plaintiffs' argument, therefore, that Master Lease had a duty under the agreement to accept plaintiffs' rejection, repossess the system, and not demand any more payments under the lease agreement is without merit. There is no language in the purchase order indicating any such duty by Master Lease. Plaintiffs fail to state a cause of action based on a third-party beneficiary theory against Master Lease, and count IV of their first amended complaint was properly dismissed as against Master Lease.

■ Plaintiffs lastly contend that they should be allowed to file a second amended complaint if this court finds that the trial court properly dismissed the counts against Master Lease. Plaintiffs requested leave to file another amended complaint in the trial court, but their complaint against Master Lease was dismissed with prejudice. Plaintiffs contend that they have suffered damages in a commercial transaction which failed in its essential purpose from the date of the system's delivery and that facts could be alleged under the Act, a third-party beneficiary theory, or other contractual theories such as failure of consideration, lack of mutual assent, or unconscionability to state a cause of action against Master Lease.

The decision whether to permit further amendment of a complaint rests within the sound discretion of the trial court, and its decision will be not be disturbed on review unless there has been a manifest abuse of discretion. (*Mundt v. Ragnar Benson, Inc.* (1975), 61 Ill. 2d 151, 161, 335 N.E.2d 10; see also *Teter v. Clemens* (1986), 112 Ill. 2d 252, 261, 492 N.E.2d 1340.) Two of the factors to consider in determining whether an abuse of discretion has occurred are whether the proposed amendment would cure the defective pleading and whether previous opportunities to amend the pleadings occurred. (*Lakeside Villas Homeowners Association, Inc. v. Zale Construction Co.* (1986), 145 Ill. App. 3d 505, 509, 495 N.E.2d 1100.) It is appropriate to refuse leave to amend when it is apparent that no cause of action can be stated. *Tishman Midwest Management Corp. v. Wayne Jarvis,*

*Ltd.* (1986), 146 Ill. App. 3d 684, 692, 500 N.E.2d 431.

Plaintiffs here were given one opportunity to amend and were still unable to state a cause of action. Also, they did not submit a proposed amendment to the trial court and, on appeal, are only making vague assertions as to what amendments would be made. Under the facts here, it is unlikely that any amendment of plaintiffs' claim would state a cause of action against Master Lease. Consequently, there was no abuse of discretion under these circumstances in not allowing filing of a further amended complaint.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

LINDBERG, P.J., and HOPF, J., concur.